**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 93-5333
_____

ALMA TORREBLANCA DE AGUILAR, et al.,

Plaintiffs-Appellants,

VERSUS

BOEING COMPANY, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Eastern District of Texas
_____

(March 7, 1995)

Before SMITH and EMILIO M. GARZA, Circuit Judges, and STAGG,[*]
District Judge.

JERRY E. SMITH, Circuit Judge:

Plaintiffs, the relatives of persons who died in an airline
crash in Mexico, appeal the district court's denial of their motion
to remand to state court, the failure of the district court to
strike or sever the third party complaint by defendant Boeing
Company ("Boeing"), and the dismissal on the ground of <u>forum non
conveniens</u> ("f.n.c."). Concluding that the district court did not
err, we affirm.

---

[*] District Judge of the Western District of Louisiana, sitting by
designation.

## I.

On March 31, 1986, a Mexicana Airlines jet crashed near Mexico City, killing everyone on board.  An investigation concluded that a tire exploded in the wheel well while the plane was in flight, causing an in-flight fire that eventually caused the plane to explode.

## II.

Relatives and personal representatives of the estates of those who died filed several lawsuits throughout the United States and in Mexico.  In every lawsuit filed in the United States, the action has been either voluntarily dismissed by the plaintiffs or dismissed on the basis of foreign sovereign immunity or f.n.c.[1]

Plaintiffs have been determined to find a United States forum in which to try their case.  In November 1992, they filed this action in Texas state court, claiming to be the personal representatives of the estates of each decedent and the legal heirs of the decedents pursuant to the Texas Survival Statute, TEX. CIV. PRAC. & REM. CODE ANN. § 71.021 (Vernon 1986).  The plaintiffs charged negligence and products liability against Boeing, B.F. Goodrich, Goodyear Tire and Rubber, Delta Airlines, and Parker Hannifin Corporation.  Under TEX. R. CIV. P. 47, plaintiffs were not allowed

---

[1] See de Aguilar v. Boeing Co., 11 F.3d 55 (5th Cir. 1993); Compania Mexicana de Aviacion, S.A. v. United States Dist. Court, 859 F.2d 1354 (9th Cir. 1988); Rodriguez v. Mexicana de Avion, S.A., (W.D. Tex. 1987), aff'd mem., 843 F.2d 498 (5th Cir.), cert. denied, 488 U.S. 826 (1988); Wolf v. Boeing Co., 810 P.2d 943 (Wash. App.), review denied, 818 P.2d 1098 (Wash. 1991).

to plead for a specific amount of damages.[2]

After defendants removed the case to federal court in the Eastern District of Texas, plaintiffs filed affidavits executed by certain plaintiffs and by the plaintiffs' attorneys, purporting to limit the damages they were seeking, and moved to remand on the ground that the $50,000 jurisdictional amount requirement was not satisfied. See 28 U.S.C. § 1332. The district court denied remand, holding that the affidavits were irrelevant because "jurisdiction attaches at the time of removal, and subsequent events do not oust the court of jurisdiction." De Aguilar v. Boeing Co., 790 F. Supp. 693, 694 (E.D. Tex. 1992). Subsequently, however, this court decided Asociacion Nacional de Pescadores v. Dow Quimica de Colombia S.A. ("ANPAC"), 988 F.2d 559 (5th Cir. 1993), cert. denied, 114 S. Ct. 685 (1994), concluding that post-removal affidavits sometimes can be relevant where the jurisdictional amount question is unresolved. Id. at 565.

The district court a quo further noted that, even if it had considered the affidavits relevant, the complaint named one hundred unknown plaintiffs who were not bound by the affidavits, and plaintiffs' counsel could not bind minor beneficiaries (constituting approximately twenty of the named plaintiffs) to judgments in wrongful death suits without leave of court. De Aguilar, 790 F. Supp. at 695. The claims later were dismissed on f.n.c. grounds. De Aguilar v. Boeing Co., 806 F. Supp. 139 (E.D. Tex.

---

[2] The rule states, "An original pleading . . . shall contain . . . (b) in all claims for unliquidated damages only the statement that the damages sought are within the jurisdictional limits of the court."

3

1992).  The court held that direct estoppel barred the plaintiffs from relitigating the f.n.c. dismissal.  Courts in Illinois, Washington, and the Western District of Texas had already ruled on this matter.  Id. at 142.  Alternatively, the court found that under traditional f.n.c. criteria, the Eastern District of Texas would not be a convenient forum.  Id. at 142-43.

This court affirmed the denial of the motion to remand and the dismissal on estoppel and f.n.c. grounds.  De Aguilar v. Boeing Co. ("de Aguilar I"), 11 F.3d 55 (5th Cir. 1993).  We held that the district court had properly disregarded the affidavits because it was "facially apparent" that the damages sought by each plaintiff exceeded $50,000.  Id. at 57.  Alternatively, we noted that the attorney affidavits were not unrebutted by evidence from the defendants.  Id. at 57-58.  These points distinguished de Aguilar I from ANPAC.

ANPAC involved claims that were not facially likely to exceed the jurisdictional amount.  ANPAC, 988 F.2d at 565.  In addition, in ANPAC, the only "evidence" the defendants produced to rebut the plaintiffs' attorneys' affidavits was the original notice of removal, which merely stated that the matter in controversy exceeded $50,000.  Id.  The de Aguilar I court noted that the defendants in that case had produced testimonial evidence and published precedent that indicated that the matter in controversy indeed exceeded $50,000.  De Aguilar I, 11 F.3d at 58.

In the alternative, the plaintiffs in de Aguilar I argued that the original notice of removal was invalid because the defendants

4

failed to prove that the amount in controversy exceeded $50,000. We rejected this argument because defendants had shown that plaintiffs had pled damages of up to $5,000,000 in other fora for the same injuries.  Id.

In the instant case, shortly after the district court had dismissed the original claims, plaintiffs' attorneys filed another petition in state court.  In this petition, at issue now, the plaintiffs dropped forty-two of the heirs, including all of the minors, and any mention of unnamed "Doe" plaintiffs.  More importantly, plaintiffs, in apparent violation of TEX. R. CIV. P. 47, described the amount of their claim by specifically alleging that their damages did not exceed $50,000.  Plaintiffs attached to the original petition an affidavit of attorney Dennis Reich stating that plaintiffs had agreed to an irrevocable cap on the amount of damages that could be awarded.

After service, defendants attempted to clarify whether Reich's affidavit constituted a binding limitation on the respective estates' damages.  Howard Close, counsel for Boeing, sent Reich a letter asking for an amendment to the affidavit, or a new affidavit, in which Reich would attest that the plaintiffs had been appointed the personal representatives of the estates and had expressly authorized Reich to make a binding and irrevocable admission on their behalf.

One of the plaintiffs' attorneys, Mitchell Toups, had a discussion with Close about the proposed amendments to Reich's affidavit.  The parties appear to dispute exactly what took place,

5

though both sides agree that plaintiffs' counsel refused to say that the plaintiffs had been appointed by a qualified court as the personal representatives of the estates. According to defendants, Toups also said that none of the plaintiffs' American attorneys had actually talked to the plaintiffs. Plaintiffs claim that the reason they refused to acknowledge that they had been appointed the personal representatives of the estates was that they were suing as heirs, not representatives.

Defendants concluded that the plaintiffs named in the petition were simply some of the heirs of the decedents and did not have the authority to limit damages. As a result, defendants once again removed to federal court in the Eastern District of Texas, establishing in their notice of removal that the amount in controversy exceeded $50,000.

Three months after removal, plaintiffs filed a supplemental motion to remand for lack of jurisdiction and attached an affidavit from a Mexican lawyer, Guadalupe Bistrain, who was one of the plaintiffs' attorneys. Bistrain swore that she had received explicit authority from each of the named plaintiffs to limit damages to $50,000. The district court determined that the plaintiffs had not shown the necessary authority to limit damages and ruled that the amount in controversy exceeded $50,000.

Defendants alleged an additional basis for federal jurisdiction. In December 1992, Boeing filed a third party complaint against Mexicana Airlines, which on January 15, 1993, filed a memorandum that claimed status as a "foreign state" under the

Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602-1611. Plaintiffs filed a motion to strike or, in the alternative, sever Boeing's third party claim. The district court denied this motion when it denied the motion to remand. Defendants subsequently moved to dismiss on f.n.c. grounds; the court granted this motion.[3]

## III.

Since the crash, plaintiffs have made repeated attempts to locate an American forum. There are actions pending in the Mexican courts also. The Supreme Court of Texas had held that the doctrine of f.n.c. no longer applied in Texas wrongful death actions. See Dow Chemical Co. v. Alfaro, 786 S.W.2d 674 (Tex. 1990), cert. denied, 498 U.S. 1024 (1991). The Texas Legislature then overruled Alfaro. See TEX. CIV. PRAC. & REM. CODE ANN. § 71.051; "21" Int'l Holdings v. Westinghouse, 856 S.W.2d 479 (Tex. App.))San Antonio 1993, no writ). The new statute, however, applies only to causes of action filed on or after September 1, 1993. Thus, plaintiffs obviously prefer Texas state court to federal court, where f.n.c. applies.

## IV.

As we have stated, plaintiffs' state court petition averred that they were seeking no recovery in excess of $50,000. During

---

[3] There is no merit to the plaintiffs' appeal of the f.n.c. dismissal. We affirmed, in de Aguilar I, 11 F.3d at 58-59, the dismissal on f.n.c. grounds. Thus, if we decide that there was federal jurisdiction in this case, the f.n.c. dismissal is law of the case.

7

oral argument, plaintiffs characterized their claim as a plea for a specific amount of damages. They argue that de Aguilar I was premised on the fact that the complaint in that case "did not specify an amount of damages." De Aguilar I, 11 F.3d at 57.

Indeed, strictly speaking, plaintiffs have not alleged a specific amount of damages, as the amount they claim can range from $1 to $50,000. We will treat the claim, however, as one for a specific amount of damages.[4] Plaintiffs have labored to specify one "magic" number in their complaint, i.e. $50,000. We regard such a complaint as more like a claim for one sum rather than a claim for an unlimited or an unspecified amount of damages; to reason otherwise would put form over substance. As a functional matter, plaintiffs are attempting to avoid federal jurisdiction. This goal is the same whether they pick a number such as $49,999 or merely announce a ceiling that, conveniently, is barely within the statutory limit.

Defendants, as on all previous occasions, seek to retain this case in federal court. In general, defendants may remove a civil action if a federal court would have had original jurisdiction. See 28 U.S.C. § 1441(a). In this particular case, jurisdiction is asserted on the basis of diversity of citizenship. 28 U.S.C. § 1332. The removing party bears the burden of establishing that federal jurisdiction exists. Gaitor v. Peninsular & Occidental S.S. Co., 287 F.2d 252, 253-54 (5th Cir. 1961).

"Unless the law gives a different rule, the sum claimed by the

---

[4] This critical distinction renders ANPAC inapposite.

plaintiff controls if the claim is apparently made in good faith." St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288 (1938). Most discussions of jurisdictional amount in removal cases begin with St. Paul Mercury.

In St. Paul Mercury, the Court announced the now famous "legal certainty" test for diversity cases: In order for a federal court to decline jurisdiction, "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount." Id. at 289. Many courts have applied the "legal certainty" language to jurisdictional amount questions in remand cases;[5] there is, however, disagreement as to exactly what a plaintiff has to show to a legal certainty to defeat federal jurisdiction.

In St. Paul Mercury, the plaintiff originally alleged damages above the jurisdictional amount in state court but amended the complaint in federal court to state less than the required amount. The Court held that the subsequent amendment could not strip the federal court of jurisdiction, provided that the original claim for damages was made in good faith. The "legal certainty" test was articulated in the Court's more general discussion of jurisdiction:

> The intent of Congress drastically to restrict federal jurisdiction in controversies between citizens of different states has always been rigorously enforced by the courts. The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal. The inabil-

---

[5] E.g., Hale v. Billups, Inc., 610 F. Supp. 162, 164 (M.D. La. 1985); Locklear v. State Farm Mut. Auto. Ins. Co., 742 F. Supp. 679 (S.D. Ga. 1989).

9

ity of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction. Nor does the fact that the complaint discloses the existence of a valid defense to the claim. But if, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed, or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed. Events occurring subsequent to the institution of the suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction.

Id. at 288-90 (footnotes omitted).

The above discussion and, hence, the legal certainty test, contemplate the "typical" diversity situation.[6] As one court has indicated, the legal certainty test "is explicitly premised on the assumption that the amount in controversy is met by the express allegations of the plaintiff's complaint and is limited in utility to cases in which the plaintiff himself has placed the requisite jurisdictional amount in controversy by requesting damages in excess of the jurisdictional amount." Garza v. Bettcher Indus., Inc., 752 F. Supp. 753, 755 (E.D. Mich. 1990).

This court has indicated that the legal certainty test does not apply in a remand situation where the plaintiff has alleged an indeterminate amount of damages. In de Aguilar I, we stated that "[w]hen the plaintiff's complaint does not allege a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds $50,000." 11 F.3d at 58 (citing Gaus v. Miles, Inc., 980 F.2d 564, 567 (9th Cir.

_____

[6] In a typical diversity situation, the plaintiff files a suit in federal court alleging damages in excess of the jurisdictional amount.

10

1992); Garza, 752 F. Supp. at 763). See also Burns v. Windsor Ins. Co., 31 F.3d 1092, 1094 (11th Cir. 1994) (noting that in the "typical" removal case "defendant can remove to federal court if he can show, by a preponderance of the evidence, facts supporting jurisdiction").

The question in this case is different from that in both the typical diversity situation and the typical removal situation. Here, the plaintiffs, in a bold effort to avoid federal court, have specifically alleged that their respective damages will not exceed the jurisdictional amount.

Plaintiffs have correctly cited the provision in St. Paul Mercury that a plaintiff who does not "desire to try his case in federal court . . . may resort to the expedient of suing for less than the jurisdictional amount, and though he would be justly entitled to more, the defendant cannot remove." 303 U.S. at 294. The inquiry, however, does not end merely because the plaintiff alleges damages below the threshold. The face of the plaintiff's pleading will not control if made in bad faith.

Moreover, the above statement from St. Paul Mercury plainly was premised on the notion that the plaintiff would not be able to recover more in state court than what was alleged in the state court complaint. So, for example, in Woods v. Massachusetts Protective Ass'n, 34 F.2d 501 (E.D. Ky. 1929), cited in St. Paul Mercury in support of the above-quoted passage, the plaintiff sued for an amount under the jurisdictional limit. Under the state provision in that case, "if there had been no removal and an answer

11

had been filed, plaintiff would not have been entitled to judgment for more than [the amount for which plaintiff sued]." Id. at 504.[7]

The majority of states now, however, have followed the example of FED. R. CIV. P. 54(c) and do not limit damage awards to the amount specified in the ad damnum clause of the state pleading. See Burns, 31 F.3d at 1097 n.11. In fact, many states, like Texas, have enacted rules that strictly prohibit plaintiffs from pleading for specific amounts in cases of unliquidated damages.

These new rules have created the potential for abusive manipulation by plaintiffs, who may plead for damages below the jurisdictional amount in state court with the knowledge that the claim is actually worth more, but also with the knowledge that they may be able to evade federal jurisdiction by virtue of the pleading. Such manipulation is surely characterized as bad faith. See Boelens v. Redman Homes, Inc., 759 F.2d 504, 507 (5th Cir. 1985) (stating that "tactical manipulation [by the] plaintiff cannot . . . be condoned") (quoting Austwick v. Board of Educ., 555 F. Supp. 840, 842 (N.D. Ill. 1983)). Likewise, as one treatise has indicated,

---

[7] See also Iowa Cent. Ry. v. Bacon, 236 U.S. 305, 309 (1915) (state pleading for less than jurisdictional amount approved where "[t]he state court had authority to determine the effect of the prayer to the petition and it decided that, under the petition, no more than the amount prayed for could be recovered in the action"); Harley v. Firemen's Fund Ins. Co., 245 F. 471, 476 (W.D. Wash. 1913) (noting that "the initial pleading, and the only pleading filed in the state court . . . fixes the amount in controversy in this case at [an amount below the jurisdictional amount] and no greater sum can be recovered"); Maine v Gilman, 11 F. 214, 215 (C.C.D. Me. 1882) ("In the mode of pleading adopted in Maine the ad damnum binds the plaintiff as a maximum, and a judgment for more is erroneous, or, at least, if not technically erroneous would be irregular and improper."); 1A JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 0.157[6], at 133-34 (2d ed. 1993) (stating that plaintiff "may prevent removal by the expedient of suing for less than the jurisdictional amount unless his attempted waiver of the balance is legally ineffective").

12

> if the prayer for relief must be ignored under applicable principles of law and plaintiff can, therefore, recover more on his state claim than the jurisdictional minimum, the case is removable; and, where plaintiff's cause of action and the relief actually sought clearly involve a controversy in excess of the required amount, removal is not defeated by a monetary prayer for less than the amount.

1A MOORE, supra, ¶ 0.158, at 204-05 (footnotes omitted).[8]

Accordingly, we hold that if a defendant can show that the amount in controversy actually exceeds the jurisdictional amount, the plaintiff must be able to show that, as a matter of law, it is certain that he will not be able to recover more than the damages for which he has prayed in the state court complaint.  Such a rule is necessary to avoid the sort of manipulation that has occurred in the instant case.

The exact extent of the burden on the defendant in this situation was addressed by a panel majority of this court in Kliebert v. Upjohn Co., 915 F.2d 142, 147 (5th Cir. 1990), vacated for reh'g en banc, 923 F.2d 47 (5th Cir.), appeal dism'd per

---

[8] The Seventh Circuit has stated:

> St. Paul held that a plaintiff may not obtain a remand by amending the complaint to seek less than the jurisdictional amount.  This principle has led some courts to hold that removal is proper, although the complaint asks for less than the jurisdictional amount, when state law permits a court to award more and the court is likely to do so if it decides in the plaintiff's favor.

In re Shell Oil Co., 966 F.2d 1130, 1131 (7th Cir. 1992) (citing Cole v. Freightliner Corp., 1991 U.S. Dist. LEXIS 3408 (N.D. Ill.); Garza; Johnson v. Core-Vent Corp., 1990 U.S. Dist. LEXIS 4225 (N.D. Ill.); Locklear v. State Farm Mut. Auto. Ins. Co., 742 F. Supp. 679 (S.D. Ga. 1989); Mutual First, Inc. v. O'Charleys, Inc., 721 F. Supp. 281 (S.D. Ala. 1989); Corwin Jeep Sales & Serv., Inc. v. American Motors Sales Corp., 670 F. Supp. 591 (M.D. Pa. 1986); Steele v. Underwriters Adjusting Co., 649 F. Supp. 1414 (M.D. Ala. 1986); Hale v. Billups, Inc., 610 F. Supp. 162 (M.D. La. 1985)).  But see Burns v. Windsor Ins. Co., 31 F.3d 1092, 1097 (11th Cir. 1994) (stating that permitting removal where the plaintiff is not bound by his state pleading but pleads an amount of damages below the jurisdictional amount "would allow state rules of procedure to determine when federal jurisdiction existed" and "could lead to inconsistent application of federal jurisdictional rules") (footnote omitted).

13

stipulation of settlement, 947 F.2d 736 (5th Cir. 1991). Having been vacated, Kliebert is no longer precedent in this court, but its analysis is useful.

In Kliebert, the plaintiffs alleged a specific dollar amount of damages that was less than the federal jurisdictional amount. The panel majority held that to remove, the defendants would have to show that it was legally certain that plaintiffs would recover more than the jurisdictional amount. Id. at 146. Thus, the defendants would have to show that "if a jury awarded less than [the jurisdictional amount] the court would be required to grant a new trial." Id.

The onerous nature of this burden stands in direct contrast to the analysis of several district courts that have stated the removal inquiry as a type of "converse legal certainty test." Under this formulation, defendant "has the burden of proving that it does not appear to a legal certainty that the claim is actually for less than the requisite amount." Hale, 610 F. Supp. at 164. Courts elsewhere have restated the test and required that the defendant show "'that there is a probability that the value of the matter in controversy' exceeds the jurisdictional amount." Corwin Jeep Sales, 670 F. Supp. at 595 (quoting Cunningham v. Ford Motor Co., 413 F. Supp. 1101, 1103 (D.S.C. 1976)).

In the present case, the district court held that the removing defendant had to establish that there is "some possibility" that the plaintiff could recover over $50,000. This formulation is supported by language from Foret v. Southern Farm Bureau Life Ins.

14

Co., 918 F.2d 534, 537 (5th Cir. 1990), in which we held that it was not error for the district court to exercise jurisdiction over a case where "the plaintiffs could have recovered more than $50,000."

Both sides argue that the preponderance of the evidence standard announced in de Aguilar I should apply in this case. We agree. As the dissenting judge indicated in Kliebert, the strict test adopted by the Kliebert majority "seems to conflict with our past decisions that have stated that the standard for determining jurisdictional amount should favor 'those parties seeking to invoke the jurisdiction of a federal district court.'" Kliebert, 915 F.2d at 148 (Jolly, J., dissenting) (quoting Opelika Nursing Home v. Richardson, 448 F.2d 658, 663 (5th Cir. 1971)).

The Kliebert standard also fails adequately to protect defendants from plaintiffs who seek to manipulate their state pleadings to avoid federal court while retaining the possibility of recovering greater damages in state court following remand. This court has spoken adamantly of "preventing the plaintiff from being able to destroy the jurisdictional choice that Congress intended to afford a defendant in the removal statute." Boelens, 759 F.2d at 507.

We regard, however, the "some possibility" standard applied by the district court and the "converse legal certainty" test, which essentially require that the defendant merely show that plaintiff could recover more than the jurisdictional amount, as too permissive. See Burns, 31 F.3d at 1092 ("The possibility that plaintiff

15

may in the future seek or recover more damages is insufficient to support federal jurisdiction now.") (emphasis added).  Plaintiff is, to some extent, still the master of his own claim.  See, e.g., Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 & n.7 (1987); 14A CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3702, at 22 (2d ed. 1985).

Consequently, the plaintiff's claim remains presumptively correct unless the defendant can show by a preponderance of the evidence that the amount in controversy is greater than the jurisdictional amount.  The preponderance burden forces the defendant to do more that point to a state law that might allow the plaintiff to recover more than what is pled.[9]  The defendant must produce evidence that establishes that the actual amount in controversy exceeds $50,000.

Our court has already said, in the instant case, that it is facially apparent that the damages rise to a level above $50,000. De Aquilar I, 11 F.3d at 57.  As a result, despite the fact that the district court imposed the wrong burden, there is no question that the preponderance burden, had the district court applied it, easily would be met by these defendants.  In fact, in accordance with the law of the case principle, this court is bound by what we held in de Aquilar I.

So, once a defendant is able to show that the amount in controversy exceeds the jurisdictional amount, removal is proper,

_____

[9] Such a holding would render the jurisdictional amount all but meaningless in states with rules analogous to FED. R. CIV. P. 54(c).  See 14A WRIGHT, supra, § 3725, at 426.

16

provided plaintiff has not shown that it is legally certain that his recovery will not exceed the amount stated in the state complaint. Thus, once the defendant has pointed to an adequate jurisdictional amount, the situation becomes analogous to the "typical" circumstances in which the St. Paul Mercury "legal certainty" test is applicable: The defendant has established, by a preponderance, that federal jurisdiction is warranted. At this point, "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." St. Paul Mercury, 303 U.S. at 289.

We emphasize that this is not a burden-shifting exercise. In light of St. Paul Mercury, plaintiff must make all information known at the time he files the complaint.

Plaintiff's "legal certainty" obligation might be met in various ways; we can only speculate, without intimating how we might rule in such case. Plaintiff's state complaint might cite, for example, to a state law that prohibits recovery of damages that exceed those requested in the ad damnum clause and that prohibits the initial ad damnum to be increased by amendment. Absent such a statute, "[l]itigants who want to prevent removal must file a binding stipulation or affidavit with their complaints; once a defendant has removed the case, St. Paul makes later filings irrelevant." In re Shell Oil Co., 970 F.2d 355, 356 (7th Cir. 1992) (per curiam).[10]

---

[10] The Eleventh Circuit has expressed reluctance to allow state rules of procedure to determine when federal jurisdiction exists. See Burns, 31 F.3d

(continued...)

17

V.

The state complaint in this case was filed in Texas, which has the following procedural provision: "An original pleading . . . shall contain . . . (b) in all claims for unliquidated damages only the statement that the damages sought are within the jurisdictional limits of the court." TEX. R. CIV. P. 47(b). Plaintiffs acknowledged during oral argument that their filing violated rule 47(b). Accordingly, there is no state provision that limits the amount of damages plaintiffs are seeking, or can recover, to the amount they have asked for in the complaint, i.e., an amount not to exceed $50,000. In summary, therefore, a plaintiff, in a case for unliquidated damages, cannot, absent a further showing, avoid removal by pleading for damages under the jurisdictional amount where a state rule prevents such pleading and where defendants are able to show that it is facially apparent that the amount in controversy exceeds $50,000.

In the case sub judice, plaintiffs also attached to the original state court petition an attorney affidavit that purported to limit the amount of damages recoverable. The federal district court reasoned, however, that the plaintiffs could not effectively

_____

(...continued)
at 1097. We note, however, the cases that we have cited, especially those mentioned by the St. Paul Mercury Court, which expressly reference state procedural rules in the context of removal.

Moreover, while the Eleventh Circuit fears the "inconsistent application of federal jurisdictional rules," we observe that the same "rule" will now hold throughout the circuit. The general principle is that plaintiffs will have to show that they are bound irrevocably by their state pleadings in these situations. Certainly, plaintiffs who plead for specific damages and who are in states that have procedural rules binding them to their pleadings will satisfy their burden more easily. Others will have the same opportunity to avoid federal court but will have to choose another method to show their commitment to recovery below the federal threshold.

18

limit the amount of damages they could obtain unless they had the authority to bind the estates by limiting damages.  In order to do so, they had to be the legal representatives or legal heirs of the estates.

On this issue, plaintiffs' initial argument is that Mexican law rather than Texas law should apply.  Specifically, they assert that under Mexican law, they are the lawful heirs of the decedents and have lawful authority to limit the damages sought by the estates.

In a diversity action, a federal court must apply the choice-of-law rules of the state in which it sits.  <u>Klaxon v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487, 496 (1941).  According to Texas law, "in all choice-of-law cases, except those contract cases in which the parties have agreed to a valid choice-of-law clause, the law of the state with the most significant relationship to the particular substantive issue will be applied to resolve that issue."  <u>Duncan v. Cessna Aircraft Co.</u>, 665 S.W.2d 414, 421 (Tex. 1984).

Texas follows RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6, which provides:

> (1)  A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
>
> (2)  When there is no such directive, the factors relevant to the choice of the applicable rule of law include
>
>> (a)  the needs of the interstate and international systems,
>>
>> (b)  the relevant policies of the forum,
>>
>> (c)  the relevant policies of other interested states and the relative interests of those states in the

determination of the particular issue,

    (d)  the protection of justified expectations,

    (e)  the basic policies underlying the particular field of law,

    (f)  certainty, predictability and uniformity of result, and

    (g)  ease in the determination and application of the law to be applied.

Furthermore, section 145 lists the factual matters that a Texas court will consider when applying section 6:

    (1)  The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

    (2)  Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

        (a)  the place where the injury occurred,

        (b)  the place where the conduct causing the injury occurred,

        (c)  the domicile, residence, nationality, place of incorporation and place of business of the parties, and

        (d)  the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145 (1971); Crisman v. Cooper Indus., 748 S.W.2d 273, 276-77 (Tex. App.))Dallas 1988, writ denied).

Furthermore, the application of the significant relationship test does not "turn on the number of contacts, but more importantly

20

on the qualitative nature of those contacts as affected by the policy factors enumerated in Section 6." Gutierrez v. Collins, 583 S.W.2d 312, 318 (Tex. 1979).

Defendants apparently relied upon only Texas cases when arguing before the district court that Texas law should apply, as plaintiffs did not argue that Mexican law should apply on this issue until they filed their motion to remand two months after removal. The district court, however, did address and reject the choice-of-law argument in its memorandum opinion, and we follow suit.

We will first identify all relevant contacts as a Texas court would. Duncan, 665 S.W.2d at 421. All defendants conduct business in Texas, the forum is Texas, and the underlying cause of action is based upon Texas law. All of the plaintiffs are from Mexico, all decedents were from Mexico, and the crash itself and the injuries took place in Mexico. There is no particular relationship between the plaintiffs and the defendants.

The matter at issue is whether Texas or Mexican law will be used to determine the extent of plaintiffs' authority to limit damage recoveries for the estates. As noted, plaintiffs plainly are seeking damages under the Texas Survival Statute.

This "particular substantive issue" has nothing to do with the actual alleged tort itself. Duncan, 665 S.W.2d at 421 (the law of the place with the "most significant relationship to the particular substantive issue will be applied to resolve that issue"). In other words, the choice-of-law question in this case is unrelated

21

to the conduct and injury underlying the cause of action in the same way that, for example, the choice of the substantive products liability law of one of the places would be.[11] See, e.g., Perry v. Aggregate Plant Prods. Co., 786 S.W.2d 21 (Tex. App.))San Antonio 1990, writ denied) (products liability law of Indiana applies to conduct and injury occurring in Indiana); Crisman (products liability law of Florida applies to conduct and injury occurring in Florida).

The fact that the accident took place in Mexico, or that there was an accident at all, is fortuitous and simply not relevant to our particular choice-of-law decision. Rather, the important fact is that the plaintiffs chose to file a suit in Texas under Texas law. Whether the plaintiffs could effectively limit the damage recovery to the estates of the decedents relates more directly to the "procedural" aspects of the suit and not to the substantive portions of the cause of action.[12]

---

[11] Obviously, in a tort case, the locus of the conduct has a greater interest in seeing that its standard of care is applied, because it affects the way that parties tailor their conduct in that state. See RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145, cmt. d, at 417-18:

> Experience and analysis have shown that certain issues that recur in tort cases are most significantly related to states with which they have particular connections or contacts. So, for example, a state has an obvious interest in regulating the conduct of persons within its territory and in providing redress for injuries that occurred there. Thus, subject only to rare exceptions, the local law of the state where the conduct and injury occurred will be applied to determine whether the actor satisfied minimum standards of acceptable conduct and whether the interest affected by the actor's conduct was entitled to legal protection (see §§ 146-147).

The particular issue in our case is more akin to the situation where "a court under traditional and prevailing practice applies its own state's rules to issue involving process, pleadings, joinder of parties, and the administration of the trial . . . ." Id. at 417.

[12] Strictly speaking, this is not a procedural issue; otherwise, the
(continued...)

22

Mexico has no underlying interest in the application of its law to determine who can bring a cause of action or bind the estate in a Texas cause of action.  Texas certainly has an interest in requiring those who seek to take advantage of Texas law to meet certain requirements.  In addition, uniformity and predictability in Texas courts would be promoted when deciding who has the authority to pursue actions on behalf of estates.  This is a false conflict, and Texas law applies.  See Duncan, 665 S.W.2d at 422.  In this situation, we have no doubt that a Texas court would choose to apply Texas law.

Plaintiffs originally claimed to be the personal representatives and legal heirs of the decedents' estates.  Boeing's attempt to amend the Reich affidavit, and the conversations which followed, however, have called this claim into substantial doubt.  In fact, plaintiffs appear essentially to have abandoned their claim as personal representatives and instead purport to be plaintiffs' legal heirs.

The plaintiffs can pursue their claims as the individual heirs of the estates under TEX. CIV. PRAC. & REM. CODE ANN. § 71.021 (Vernon's 1986).  Legal heirs can sue on behalf of an estate if they allege that "there is no administration [of the estate] pending and no necessity for same and that they are the only heirs (or devisees) of the deceased."  Lozano v. Smith, 718 F.2d 756, 773 n.38 (5th Cir. 1983); see also Frazier v. Wynn, 472 S.W.2d 750, 752

---

(...continued)
federal procedural rules would apply.

23

(Tex. 1971); Johnson v. Holly Farms, Inc., 731 S.W.2d 641, 647 (Tex. App.))Amarillo 1987, no writ).

Plaintiffs have not alleged any of these elements. They now argue that the district court erred in not requiring the defendants to offer evidence that the above elements could not be satisfied. Plainly, though, the rule is that the plaintiffs must affirmatively allege the above elements. See Johnson, 731 S.W.2d at 647.

In any event, defendants did offer evidence that the plaintiffs in this case are not the sole heirs. Forty-two persons alleged in de Aguilar I to be heirs of the decedents, as well as twenty minors, were dropped as plaintiffs. It appears that known heirs were deleted from this case because plaintiffs knew that they would not be able to limit the damage claim with these heirs as part of the action.[13] The one hundred "Doe" plaintiffs from the first action were also eliminated. The inclusion of "Doe" plaintiffs in de Aguilar I suggests that the plaintiffs' attorneys were not aware of who all of the heirs were, and the plaintiffs have contended nothing that appears to change this circumstance.

In fact, plaintiffs' attorney acknowledged at oral argument that he does not represent all of the legal heirs. Defendants also argue that in a previous complaint, all of the present plaintiffs and all of the plaintiffs from de Aguilar I were included, and the plaintiffs still said that this was only a partial listing and that additional survivors would be named. Plaintiffs plainly have

---

[13] For example, a court must approve the limiting of a claim when minors are involved.

24

failed to meet the requirements of Texas law to limit the damages recoverable to the estates in this case. As a result, plaintiffs have failed to defeat removal jurisdiction.[14]

The judgment of the district court dismissing the complaint is AFFIRMED.

---

[14] As this issue is dispositive, we find it unnecessary to address the issue of Boeing's third party complaint.