**John Richard WISE**

v.

**BAYER, A.G., et al.**

**No. CIV.A. 03–1095–A.**

United States District Court,
W.D. Louisiana.
Alexandria Division.

Aug. 8, 2003.

Robert L. Salim, Natchitoches, LA, for Plaintiff.

John F. Olinde, Mary L. Meyer, Peter J. Rotolo, III, Chaffe McCall et al., Charles D. Marshall, Jr., Milling Benson et al., New Orleans, LA, Keith C. Armstrong, Chaffe McCall et al., Baton Rouge, LA, E. Paige Sensenbrenner, Elisia E. Shofstahl, Adams & Reese, New Orleans, LA, Amy C. Lambert, Adams & Reese, Baton Rouge, LA, for Defendants.

### *RULING*

DRELL, District Judge.

Before the Court are the Motion to Remand filed by Plaintiff, John Richard Wise, on June 30, 2003,[1] and the Motion to Stay, filed July 15, 2003 by Defendants, Bayer Corporation (hereinafter sometimes referred to as "Bayer") and SmithKline Beecham Corporation d/b/a GlaxoSmithKline (hereinafter sometimes referred to as "GSK").[2] Although Defendants have not

---

**1.** Doc. 9.

**2.** Doc. 16.

filed a document titled "opposition" to the Motion to Remand, their objections to that Motion are set forth in the Notice of Removal filed on June 9, 2003 and in the brief supporting the Motion to Stay.[3] The Court finds there is no need for oral argument. For the reasons that follow, Plaintiff's Motion to Remand is GRANTED, and Defendants' Motion to Stay is DENIED.

## BACKGROUND

Mr. Wise, a Louisiana citizen, filed his Original Petition in the 8th Judicial District Court for the Parish of Winn, Louisiana on March 20, 2003.[4] Plaintiff named Bayer, A.G.; Bayer Corporation; Bayer Pharmaceutical Division—North America; GlaxoSmithKline, PLC; and SmithKline Beecham Corporation as defendants. It is undisputed that all the defendants named in the Original Petition are citizens of states other than Louisiana.[5] Thus, within the four walls of the Original Petition, complete diversity exists as contemplated by 28 U.S.C. § 1332.

Plaintiff alleges he took the drug Baycol from September 2000 through August 2001. Mr. Wise contends he discovered in December 2002 that his claimed medical problems were potentially related to his use of Baycol. He further asserts that Defendants "manufactured, marketed, distributed, and/or placed into the stream of commerce"[6] the drug Baycol, which drug was allegedly defectively designed or formulated. Mr. Wise also sets forth claims for failing to warn Plaintiff and/or his physicians of the supposed dangers associated with Baycol, for negligence, and for intentionally and/or negligently misrepresenting information about the drug.

Bayer Corporation was served with Plaintiff's Original Petition on April 11, 2003.[7] SmithKline Beecham Corporation d/b/a GlaxoSmithKline filed an Answer to the Original Petition in state court on April 21, 2003.[8]

On May 7, 2003, Mr. Wise submitted a First Amending Petition to the state court, in which document he seeks to add Louisiana State University Health Sciences Center (hereinafter sometimes referred to as "LSUHSC"), a Louisiana health care provider, as a defendant. Plaintiff also asks to amend the Original Petition to add a listed injury and to aver the amount of damages being sought is greater than $50,000.[9] Bayer Corporation received a copy of the First Amending Petition on May 8, 2003.[10]

Bayer Corporation filed its Answer to Plaintiff's Original Petition in state court on May 22, 2003.[11] Subsequently, on June 9, 2003, Bayer and GSK filed a Notice of Removal to this Court.[12]

## ANALYSIS

### *Plaintiff's Motion to Remand*

In *Manguno v. Prudential Property and Casualty Insurance Company*, 276 F.3d 720, 723 (5th Cir.2002), the court of

---

3. Docs. 6 and 16.

4. Doc. 1.

5. *See* Mtn. to Rem. p. 2.

6. Orig. Pet. ¶ 6.

7. Doc. 13. Bayer Corporation confirmed this service in its Consent Motion and Order for First Extension of Time filed on April 21, 2003. (Attachment to Doc. 11.)

8. Doc. 5 and attachment to Doc. 11. The record, as it currently stands, does not document the date on which GSK was served.

9. Doc. 3 and attachment to Doc. 11.

10. Not. of Rem. p. 7.

11. Doc. 4 and attachment to Doc. 11.

12. Doc. 6.

appeals reiterated the standards governing removal. Specifically, the court explained:

A party may remove an action from state court to federal court if the action is one over which the federal court possesses subject matter jurisdiction. *See 28 U.S.C. § 1441(a).* The removing party bears the burden of showing that federal jurisdiction exists and that removal was proper. (Citations omitted.) To determine whether jurisdiction is present for removal, we consider the claims in the state court petition as they existed at the time of removal. (Citation omitted.) Any ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand. (Citation omitted.)

In the case here for consideration, Defendants assert this Court possesses subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a), which provision requires complete diversity of citizenship of the named parties and an amount in controversy in excess of $75,000, exclusive of interest and costs.

*Diversity of Citizenship*

The parties do not contest the fact that complete diversity of citizenship existed at the time the Original Petition was filed. In his Motion to Remand, however, Plaintiff asserts that Louisiana State University Health Sciences Center, the defendant named in the First Amending Petition, is a citizen of the State of Louisiana whose presence in the litigation destroys diversity and divests this Court of subject matter jurisdiction. In their Notice of Removal, Defendants do not dispute LSUHSC's Louisiana citizenship. Rather, they argue complete diversity continues on the bases that Plaintiff's First Amending Petition has not yet been properly filed (because Plaintiff did not procure leave of court to file it in state court), and/or that the addition of LSUHSC as a defendant is premature.

Because this Court finds subject matter jurisdiction is lacking for other reasons, discussed in detail below, the diversity of citizenship issues will not be resolved in this forum.

*Timeliness of Removal*

28 U.S.C. § 1446 outlines the time periods governing removal of actions and provides, in pertinent part:

The notice of removal of a civil action ... *shall be filed within thirty days* after the receipt by the defendant, through service or otherwise, *of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based ....*

*If the case stated by the initial pleading is not removable,* a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.... (Emphasis added.)

In the initial Petition, Plaintiff sets forth the following claimed damages:

Severe stomach and bowel problems; ... [j]oint, shoulder, and back problems; ... [e]xtreme pain; ... [e]motional distress and mental anguish[;] ... loss of earning capacity[;] ... substantial medical bills for the remainder of his life[;] ... agonizing pain[;] ... severe physical and mental shock[;] ... loss of wages and other damages for which he is entitled to reasonable and adequate compensation.[13]

---

**13.** Orig. Pet. ¶¶ 21–23.

Additionally, Mr. Wise seeks recovery of costs associated with obtaining medical reports and hospital records, expert witness fees, and attorney's fees. After outlining these items of damages, Plaintiff states in paragraph twenty-four of his Original Petition, "that the amount of damages being sought is less than Fifty Thousand ($50,000.00) Dollars." In the prayer, Plaintiff asks for "an award that will reasonably and adequately compensate him for the damages he has sustained and will sustain for the remainder of his life[,] ... attorney's fees[,] ... expert witness fees [,] ... and [a]ll such other relief as law, equity and the nature of the case may permit."

On the damage front, Plaintiff's First Amending Petition only seeks to add "Rhabdomyolysis" to the list of ailments and to revise paragraph twenty-four of the Original Petition to allege "the amount of damages being sought is greater than Fifty Thousand ($50,000.00) Dollars."

In the Notice of Removal, Defendants argue the information provided in the First Amending Petition makes it "clear that the amount in controversy ... exceeds $75,000, exclusive of interest and costs."[14] Specifically, Defendants contend the delineation of rhabdomyolysis "in conjunction with" the allegations in Plaintiff's Original Petition "facially" demonstrate the amount in controversy requirement is satisfied.[15]

In support of their position, Defendants rely in part on the reasoning of the Fifth Circuit Court of Appeals in *Manguno*, 276 F.3d at 723. In that case, as in the case here, plaintiff was limited by La. C.C.P. art. 893, which article prohibits plaintiffs from petitioning for a specific monetary amount.[16] Therefore, he simply alleged " 'the amount in controversy [did] not exceed $75,000....' " *Manguno*, 276 F.3d at 722. The appellate court explained that although it would normally look to the state court petition to determine the amount in controversy, Mr. Manguno's statement was equivalent to a petition that did not include a specific monetary demand. Accordingly, following the analysis in *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1412 (5th Cir.1995), the *Manguno* court found that in such a circumstance, the removing party has the burden of establishing by a preponderance of the evidence that the amount in controversy exceeds $75,000. This requirement can be met if either of the following is true:

> (1) It is apparent from the face of the petition that the claims are likely to exceed $75,000, or, alternatively, (2) the defendant sets forth 'summary judgment type evidence' of facts in controversy that support a finding of the requisite amount. *See Simon v. Wal–Mart Stores, Inc.*, 193 F.3d 848, 850 (5th Cir. 1999); *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir.1995); *see also Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir.1999).

*Id.* at 723.

The panel also reiterated the long-standing rule that if a state statute provides for attorney's fees, such fees *are* to be includ-

---

14. Not. of Rem. p. 5.

15. *Id.*

16. La. C.C.P. art. 893 provides, in relevant part:

A. (1) No specific monetary amount of damages shall be included in the allegations or prayer for relief of any original, amended, or incidental demand. The prayer for relief shall be for such damages as are reasonable in the premises. If a specific amount of damages is necessary to establish the jurisdiction of the court, the right to a jury trial, the lack of jurisdiction of federal courts due to insufficiency of damages, or for other purposes, a general allegation that the claim exceeds or is less than the requisite amount is sufficient.

ed when determining the amount in controversy. *Manguno,* 276 F.3d at 723.

Defendants in the instant case also reference *Gebbia v. Wal–Mart Stores, Inc.,* 233 F.3d 880, 883 (5th Cir.2000), in which the court held plaintiff's petition alleging injuries to her right wrist, left knee and patella, and upper and lower back in combination with damages for medical expenses, physical pain and suffering, mental anguish and suffering, loss of enjoyment of life, loss of wages and earning capacity, and permanent disability and disfigurement made it "facially apparent" plaintiff's damages exceeded $75,000. In reaching this conclusion, the appellate court analogized the case before it to *Luckett,* 171 F.3d at 298 (5th Cir.1999), in which it was "facially apparent" from the plaintiff's original petition that the claimed damages exceeded $75,000, because plaintiff described damages for "property, travel expenses, an emergency ambulance trip, a six day (sic) stay in the hospital, pain and suffering, humiliation, and temporary inability to do housework after the hospitalization." *Id.*

This Court agrees with Defendants that the jurisprudence they have referenced correctly sets forth the procedural framework used to determine the amount in controversy for purposes of § 1332(a)(1) if a Louisiana plaintiff has followed the pleading requirements in La. C.C.P. art. 893. The Court also agrees with Defendants that, if this framework is applied to

the facts at hand, it is established by a preponderance of the evidence that the amount in controversy exceeds $75,000.

However, I disagree with Defendants' argument that the amount in controversy requirement was satisfied only by way of Plaintiff's First Amending Petition.

Bayer was served with the original petition on April 11, 2003. Although the record does not reveal the date service was effected on GSK, that defendant answered the petition on April 21, 2003. Therefore, May 12 and May 21 (at the latest) are the dates by which Defendants would have needed to remove this case if the Original Petition sets forth a basis for federal jurisdiction.

As our colleague, Judge Zainey of the Eastern District of Louisiana, has recently noted in *Stewart v. Alvarez,* No. Civ.A. 02–1159, 2002 WL 31255407 (E.D.La. Oct. 8, 2002), there remains in this Circuit confusion regarding the level of specificity required to commence the thirty-day period in 28 U.S.C. § 1446(b).[17]

The relevant case law begins with *Chapman v. Powermatic, Inc.,* 969 F.2d 160, 161 (5th Cir.1992), in which Judge De-Moss, writing for the panel, explained that 28 U.S.C. § 1446(b) enunciates a two-tier test for determining whether removal is timely. Specifically, the court found:

> The first paragraph provides that if the case stated by the initial pleading is removable, then notice of removal must

---

**17.** Judge Zainey resolved the problem by finding plaintiff's original petition, while not alleging a particular amount of damages, did describe "significant and severe injuries of a serious nature," and did seek attorney's fees and penalties for statutory violations. Therefore, the court concluded, "the original petition was sufficient to put [defendant] on notice that plaintiff's claim was removable because the petition 'affirmatively reveals on its face' that the amount in controversy exceeds $75,000.00." *Id.* at *3.

Due to the practical way in which matters come before the courts, some jurisprudence focuses on amount in controversy issues from the perspective of the removing defendant's threshold obligations, while other cases gaze in hindsight through the eyes of the party seeking remand. Regardless of the approach taken, the jurisprudence coalesces to help define the parameters of federal subject matter jurisdiction.

be filed within thirty days from the receipt of the initial pleading by the defendant; and the second paragraph provides, if the case stated by the initial pleading is not removable, then notice of removal must be filed within thirty days from the receipt of an amended pleading, motion, order, or other paper from which the defendant can ascertain that the case is removable.

Mr. Chapman filed his original petition in Texas and complied with Texas Rule of Civil Procedure 47(b), which rule allowed claims for unliquidated damages to state only that the damages sought were within the jurisdictional limits of the court. Judge DeMoss compared the Texas pleading rule with La. C.C.P. art. 893 and opined that neither rule prohibited a plaintiff from alleging in his initial pleading that the damages exceeded the minimum jurisdictional amount of the federal court. Therefore, in order to promote "certainty and judicial efficiency by not requiring courts to inquire into what a particular defendant may or may not subjectively know," the *Chapman* court held that the thirty-day time period set forth in the first paragraph of 28 U.S.C. § 1446(b) "starts to run from defendant's receipt of the initial pleading only when that pleading affirmatively reveals on its face that the plaintiff is seeking damages in excess of the minimum jurisdictional amount of the federal court." *Chapman,* 969 F.2d at 163. The Fifth Circuit further explained it saw its decision as the adoption of "a bright line rule requiring the plaintiff, if he wishes the thirty-day time period to run from the defendant's receipt of the initial pleading, to place in the initial pleading a specific allegation that damages are in excess of the federal jurisdictional amount." *Id.*

Ten years later, in *Bosky v. Kroger Texas, LP,* 288 F.3d 208, 210 (5th Cir.2002), Judge DeMoss was again sitting on a panel faced with determining whether a Texas plaintiff had timely removed her case. In *dicta* the court explained that, subsequent to *Chapman,* the Fifth Circuit had found,

> [S]pecific damage estimates that are less than the minimum jurisdictional amount, when combined with other unspecified damage claims, can provide sufficient notice that an action is removable [under the first paragraph of 28 U.S.C. § 1446(b)] so as to trigger the time limit for filing a notice of removal.

Writing for the panel, Judge Higginbotham noted that the first paragraph of § 1446(b) addresses an initial pleading "setting forth" a claim that could have been filed originally in federal court. Conversely, the second paragraph of § 1446(b) uses the word "ascertained" in connection with the giving of notice. Since "setting forth" means to "publish" or "to give an account or statement of," and "ascertain" means "to make certain, exact, or precise," the *Bosky* court determined the plain language of § 1446(b) requires a defendant only to show by a preponderance of the evidence that the amount in controversy expressed in an initial pleading exceeds $75,000. However, if the initial pleading is not removable, the thirty-day period in paragraph two of § 1446(b) does not start to run unless the amended pleading, motion, order, or other paper articulates the basis for federal jurisdiction in a manner that is "unequivocally clear and certain." *Id.* at 211. Judge Higginbotham specifically referenced *Marcel v. Pool Co.,* 5 F.3d 81, 82–85 (5th Cir.1993) and *De Aguilar,* 47 F.3d at 1408–12. Judge DeMoss was again on the panel in *Marcel,* which case posited removal from a Louisiana state court to be appropriate because it was facially apparent from the original petition that plaintiff's damages could exceed the jurisdictional limit of the federal court, in spite of plaintiff's attempt to stipulate to a lesser recovery in his motion to

remand. In *De Aguilar*, plaintiffs' Texas petition alleged their damages did not exceed $50,000. Despite this statement, the Fifth Circuit found that if defendants seeking to remove the action could show the amount in controversy actually exceeded the jurisdictional amount, the plaintiffs had to establish, as a matter of law, that it was certain they would not be able to recover more than the damages for which they had prayed in the state court petition.

Since *Chapman*, some district courts in the Fifth Circuit have required plaintiff to enunciate a specific dollar allegation to begin the thirty-day removal period,[18] while others have found that *Chapman* does not mandate "rigid adherence to some kind of formalistic pleading requirement...."[19] Rather, the latter courts say *Chapman* "merely requires that a state court complaint be sufficiently definite *on its face* to enable defendants to ascertain removability without reliance on speculation or conjecture."[20]

A cogent and helpful discussion of the *Chapman* opinion is found in *Century Assets Corporation v. Solow*, 88 F.Supp.2d 659 (E.D.Tex.2000), wherein plaintiffs' original petition sought compensatory and punitive damages as well as attorney's fees in relation to a dispute surrounding oil and gas leases. The court noted that defendants had previously sued these same plaintiffs for slander of title on the leases at issue and had alleged damages of at least $1,000,000. This fact, coupled with information directly available to defendants through means other than the original Texas petition, led the court to conclude the defendants "could have easily discovered and established that more than

$75,000 was in controversy." *Id.* at 663. Therefore, defendants' failure to remove the case within thirty days of receiving the initial petition necessitated remand. In so holding, the court stated:

> If this court were to follow the defendants' reasoning that cases are not removable until there has been an absolute affirmation that more than $75,000 was in issue, then plaintiffs would deliberately avoid making these kinds of statements until the one year time limit in § 1446(b)[21] had expired.... Certainly Congress did not intend to condone this type of forum manipulation.
>
> \*       \*       \*       \*       \*       \*
>
> This court joins other courts in holding that defendants cannot convert the *Chapman* "bright line" rule into a "head in the sand" rule.

*Id.* at 662–663.

■ Applying this reasoning to the instant case, remand is all but mandatory. While Mr. Wise does assert in his Original Petition that the amount of damages "being sought" is less than $50,000, he also alleges in the same document that he has suffered severe injuries and damages including pain, emotional distress, mental anguish, loss of earning capacity, substantial medical bills for the remainder of his life, expert witness fees, and attorney's fees as a result of ingesting the drug Baycol. Regarding damages, the First Amending Petition does nothing more than seek to add the word "Rhabdomyolysis" and to assert the amount of damages being sought is greater than $50,000. The First Amending Petition does not *specifically*

---

**18.** *See Hydro–Action, Inc. v. James*, 233 F.Supp.2d 836 (E.D.Tex.2002).

**19.** *Evett v. Consolidated Freightways Corporation*, 110 F.Supp.2d 510, 513 (E.D.Tex.2000).

**20.** *Id.*

**21.** The second paragraph of 28 U.S.C. § 1446(b) provides that a case may not be removed on the basis of diversity jurisdiction more than one year after commencement of the action.

allege Plaintiff's damages even approach $75,000. Rather, as Defendants' own filings show, the vast majority of information suggesting the amount in controversy exceeds the federal jurisdictional threshold is found in Mr. Wise's Original Petition.

Specifically, in the Brief supporting their Motion to Stay, Defendants argue:

> Plaintiff's conclusory statement that "the amount of damages being sought is less than Fifty Thousand … Dollars" … does not include all items of potential recovery in this case, such as [P]laintiff's request for statutory attorney's fees. However, statutory attorney's fees must be included in the valuation of the amount in controversy. (Citations omitted.) Second, the damages allegation in the [original] Petition is non-binding, and thus, does not limit [P]laintiff's right to … recover damages in excess of the federal jurisdictional minimum. (Citations omitted.)
>
> \* \* \* \* \* \*
>
> Thus, [P]laintiff's self-serving claim that the amount of damages being sought is less than fifty thousand dollars was made for the obvious purposes of avoiding federal jurisdiction … and is … insufficient to defeat … removal of this action.[22]

Defendants further assert:

> [T]he same plaintiff's counsel has filed binding stipulations limiting the amount in controversy to under (sic) $75,000 … in at least seven other cases with allegations identical to allegations in this case.

Plaintiff's failure to file such a stipulation in this case cannot be construed in any other way but (sic) as a refusal to limit his recovery to below the federal jurisdictional minimum.[23]

Defendants may not "have their cake and eat it too." If the Original Petition sets forth damages in excess of $75,000, as Defendants obviously recognized and vehemently argue now, they should have removed this case within thirty days of their receipt of the Petition. They did not do so. Instead, they waited until after they received the First Amending Petition, which, they themselves admit, "seek[s] damages for the same alleged injury…."[24] Under these circumstances, where Defendants admit now they knew of the potential value of the case, the matter will be remanded.[25]

### Defendants' Motion to Stay

■ Defendants argue this court should defer ruling on the Motion to Remand pending transfer of this case to MDL–1431, which was created by the Judicial Panel on Multi-District Litigation. That action is apparently before Judge Michael Davis in the United States District Court for the District of Minnesota. Defendants explain that the multi-district litigation contains approximately 4,010 of the 9,800 lawsuits concerning damages alleged to have been caused by the ingestion of Baycol, and that judicial efficiency would be served by allowing Judge Davis to decide all procedural matters in Baycol cases

---

22. Doc. 16, at pp. 10–12.

23. *Id.* at p. 12.

24. *Id.* at footnote 5.

25. If the Court assumes *arguendo* that the Original Petition does not reveal a facially apparent basis for removal, Defendants have another problem. In their Notice of Removal and their Motion to Stay these proceedings,

Defendants refer this Court to other litigation, apparently known to them and their counsel all along, related to the ingestion of Baycol. In one such case, plaintiff's allegations of physical injury including muscle pain, nausea, weakness, headaches, dark urine, and fatigue were sufficient to establish the dollar value for federal jurisdiction. Certainly, then, Defendants were aware Mr. Wise's similar allegations supported removal. *See* Not. of Rem. p. 6.

pending before the federal courts. Defendants inform the Court the instant case has not yet been transferred to the MDL, but that Bayer has filed a tag-along notice for the case with the JPML. Under these circumstances, this Court retains jurisdiction over the case.[26]

In support of their Motion, Defendants refer to several other matters in which United States District Courts have stayed Baycol cases while awaiting transfer to the Multi–District Litigation, even if plaintiffs were seeking remand. However, in the Louisiana cases cited by Defendants, remand was based either on fraudulent joinder or on another ground that was or would be pending in other cases already before the multi-district panel. Defendants do not show that any of the cases currently within MDL–1431 have at issue timeliness of removal of an action filed in accordance with Louisiana's pleading rules. Given the particular nature of Louisiana's procedural requirements and the peculiarities of Fifth Circuit law on removal in diversity actions, the undersigned specifically finds that resolution of the pending Motion to Remand in this Court does not impede judicial efficiency and does not promote inconsistent pretrial rulings. Rather, the contrary is true. Accordingly, Defendants' Motion to Stay will be denied.

## CONCLUSION

For the reasons set forth above, plaintiff's Motion to Remand is GRANTED, Defendants' Motion to Stay is DENIED, and this matter is REMANDED to the 8th Judicial District Court, Winn Parish, Louisiana.

---

**26.** *See* Rule 1.5, Rules of Procedure of the     JPML.