Lorraine S. SPANN, David Nixon, Joseph Pinckney, Jr., Michael Lisbon, Judy Spradley, Clifford Middleton, and James D. Turner, on behalf of themselves and others similarly situated, Plaintiffs,

v.

STYLE CREST PRODUCTS, INC.; Tie Down Engineering, Champion Enterprises, Inc.; CMH Homes, d/b/a Clayton Homes, Inc.; Fleetwood Enterprises; Horton Homes d/b/a Dynasty Homes, Inc. and d/b/a H & S Homes; Oakwood Homes Corporation, and Southern Energy Homes, Defendants.

No. 2:01–3315–18.

United States District Court,
D. South Carolina,
Charleston Division.

Oct. 31, 2001.

Lyles, Jr., Charleston, SC, Ryan Earhart, Charleston, SC, M. Dawes Cook, Jr., Charleston, SC, Thomas B. Pritchard, Charleston, SC, J. Scott Hale, Greensboro, NC, Benjamin D. McCoy, Columbia, SC, S. Keith Hutto, Columbia, SC, William H. Latham, Columbia, SC, J. Boone Aiken, III, Florence, SC, James M. Saleeby, Jr., Florence, SC, Walter K. Martens, Rock Hill, SC, Mark H. Wall, Charleston, SC, Morgan S. Templeton, Charleston, SC, for defendants.

## ORDER

NORTON, District Judge.

This matter is before the court on plaintiffs' motion to remand for lack of subject matter jurisdiction.

### I. Factual Background

Plaintiffs filed this class action in the Court of Common Pleas for the Ninth Judicial Circuit in Berkeley County, South Carolina. Plaintiffs are alleging negligence, breach of warranty, fraud, and misrepresentation regarding the manufacture and sale of the soil anchor/tie down system of securing mobile homes to the ground. Plaintiffs contend that "although marketed as an effective, reliable and safe means to secure mobile homes to the ground so that the occupants remain safe and secure during high winds, in fact, the soil anchor/tie down system fails to perform as advertised or to even meet the minimum governmental standards for such systems." (Pls.' Mot. to Remand ¶ 1.) Defendants are the national manufacturers of the soil anchor/tie-down system and the manufacturers of mobile homes.

Edward J. Westbrook, Charleston, SC, Edward B. Cottingham, Bennettsville, SC, Christopher M. Homes, Charleston, SC, for plaintiffs.

Charles E. Carpenter, Jr., Columbia, SC, John K. Blincow, Jr., Charleston, SC, Joseph E. Major, Greenville, SC, Dunn D. Hollingsworth, Charleston, SC, Robert T.

### II. Law/Analysis

■ Defendants removed this case based on diversity jurisdiction under 28 U.S.C. § 1332 and supplemental jurisdic-

tion under 28 U.S.C. § 1367. The plaintiffs are all South Carolina residents and the defendants are corporations whose place of incorporation and/or principal place of business are outside of South Carolina; therefore, the only question for purposes of § 1332 is whether the "matter in controversy exceeds $75,000, exclusive of interest and costs." 28 U.S.C. § 1332. In a class action, if there are "separate and distinct claims by two or more plaintiffs, the determination of the amount in controversy is based upon each plaintiff's claims and not upon the aggregate." *Glover v. Johns–Manville Corp.*, 662 F.2d 225, 231 (4th Cir.1981) (*citing Zahn v. Int'l Paper Company*, 414 U.S. 291, 293–96, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973).) However, in *Rosmer v. Pfizer*, 263 F.3d 110 (4th Cir. 2001), the Fourth Circuit recently held that if a named representative plaintiff has a claim in excess of $75,000, a federal court has jurisdiction over the entire class based on supplemental jurisdiction under § 1367. Therefore, under *Zahn*, as interpreted by *Rosmer*, this court has subject matter jurisdiction over the entire class if at least one of the named plaintiffs has a claim exceeding $75,000. *Id.*

■■■■ Defendants, as the removing parties, have the burden of establishing jurisdiction. *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994). On a motion to remand, courts should construe removal jurisdiction strict-

ly in favor of state court jurisdiction. *Id.* "If federal jurisdiction is doubtful, a remand is necessary." *Id.* The Fourth Circuit has not decided the proper standard in a motion to remand[1] for determining whether the amount in controversy exceeds $75,000.[2] In cases in which the plaintiff has not specified a damage claim,[3] courts have required defendants justifying the removal of a case to federal court based on diversity jurisdiction to meet one of at least four different standards to show that the amount in controversy has been satisfied: (1) "legal certainty," *White v. J.C. Penney Life Ins. Co.*, 861 F.Supp. 25, 27 (S.D.W.V.1994); (2) "preponderance of the evidence," *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1357 (11th Cir. 1996); (3) "reasonable probability," *Reason v. General Motors Corp.*, 896 F.Supp. 829, 834 (S.D.Ind.1995); and (4) inverse legal certainty, *see Hale v. Billups of Gonzales, Inc.*, 610 F.Supp. 162, 163–64 (D.La. 1985); *Woodward v. Newcourt Commercial Fin. Corp.*, 60 F.Supp.2d 530, 531 (D.S.C.1999) ("[T]he defendant must show that it does not appear to a legal certainty that the removed claim is for less than the jurisdictional amount."). This court declines to adopt the so-called "inverse legal certainty" standard because it essentially shifts the burden of showing grounds for removal from the defendant to the plaintiff. Applying any of the other three standards, the defendants fail to meet their

---

**1.** It is well-settled that the "legal certainty" standard applies when the case is filed by the plaintiff in federal court and the defendant challenges jurisdiction. *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938). The confusion over the standard only exists in cases in which the defendant has removed the case from state court. *See De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1409–10 (5th Cir.1995); Charles Alan Wright, Arthur R. Miller, and Edward H. Cooper, 14A Federal Practice and Procedure § 3702.

**2.** *See Rota v. Consolidation Coal Co.*, 175 F.3d 1016 n. 4 (4th Cir.1999) (Table) (noting that the proper standard for assessing the value of an unspecified damage claim is subject to debate and declining to adopt a position).

**3.** As discussed below, plaintiffs specifically limited their compensatory damages claim in their complaint, but they did not limit the amount of their entire claim, including punitive damages and injunctive relief. Therefore, although plaintiffs have limited part of their claim, the total amount in controversy has not been specified.

burden of showing that any of the plaintiffs has a claim exceeding $75,000.

### 1. Compensatory Damages

█ In their Complaint, plaintiffs stipulate that "[n]o individual class member will have *compensatory* damages exceeding Seventy Five Thousand ($75,000) Dollars." (Compl. ¶ 4 (emphasis added).) Plaintiffs calculate compensatory damages as the cost of the replacing the soil anchor/tie-down system, which they estimate will not cost more than a few thousand dollars. (Pls.Mem. at 19.) Plaintiffs suggest three alternatives: (1) replacement of the soil anchor tie-down system; (2) providing each plaintiff with a permanent foundation; and (3) adding more anchors. (Pls.Mem. at 17–18.) Although the parties differ over the exact cost of these remedies, defendants concede that a permanent foundation, the most expensive of these remedies, costs around $7,000. (Home Manufacturers' Mem. at 9.)

Nonetheless, defendants contend that despite the limitation in their Complaint, plaintiffs have actually alleged compensatory damages which could exceed $75,000 per named plaintiff.[4] (Style Crest Opp. Mem. at 10.) Defendants, while perhaps engaging in a bit of hyperbole, argue that by claiming property damage, personal injury, and economic loss and the "the risk of" future property damage, personal injury and economic loss, "it would fly in the face of experience and common sense for Plaintiffs to deny the strong likelihood that each of them would recover more than $75,000." (Style Crest Opp.Mem. at 12.) Specifically, defendants argue that because one of the named plaintiffs, Joseph Pinckney, Jr., paid $93,000 for his mobile home,

excluding its contents, the property damage resulting from a theoretical failure of the tie–down system could exceed $75,000. (Style Crest Opp.Mem. at 11.)

█ Ordinarily, the sum claimed by a plaintiff in his complaint determines the jurisdictional amount, and a plaintiff may plead less than the jurisdictional amount to avoid federal jurisdiction. *See St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 294, 58 S.Ct. 586, 82 L.Ed. 845 (1938) ("If [the plaintiff] does not desire to try his case in the federal court he may resort to the expedient of suing for less than the jurisdictional amount, and though he would be justly entitled to more, the defendant cannot remove."); *see also* Charles Alan Wright, Arthur R. Miller, and Edward H. Cooper, 14A Federal Practice and Procedure § 3702 ("Plaintiff is the master of his or her own claim; if plaintiff chooses to ask for less than the jurisdictional amount, only the sum actually demanded is in controversy.").

Defendants urge this court to adopt the approach set forth *De Aguilar v. Boeing Co.* 47 F.3d 1404, 1410 (5th Cir.1995), in which the court held that pleading below the jurisdictional minimum may be ignored if a defendant can show by a "preponderance of the evidence" that the amount in controversy actually exceeds the jurisdictional amount. *See also Burns v. Windsor Co.*, 31 F.3d 1092, 1095–96 (11th Cir.1994) (announcing that in order to disregard plaintiff's claim, "defendant must prove to a *legal certainty* that plaintiff's claim must exceed· [the jurisdictional amount]" based on an objective assessment by the court.) (emphasis added). The *De Aguilar* court

---

**4.** Defendants argue that the plaintiff has claimed the following damages: Personal Injury Damages, Cost of Replacement/Retrofit Damages, Benefit of Bargain Damages, unspecified property damage, unspecified economic loss, unspecified alleged risk of inju-

ry/property damage, prejudgment interest, punitive damages, and injunctive relief (Tie Down's Opp.Mem. at 6–7.) All of these damages, except for punitive damages and injunctive relief, fall under the category of compensatory damages.

reasoned that a plaintiff's claim for relief is not always determinative of the amount in controversy because state procedural rules often do not limit damage awards to the plaintiff's original prayer for relief, thereby allowing a plaintiff to avoid federal jurisdiction while knowing that a larger award is possible in state court. 47 F.3d at 1410. The court explained that this situation has "created the potential for abusive manipulation by plaintiffs" acting in "bad faith." *Id.* Consequently, the court held that "plaintiff's claim remains presumptively correct unless the defendant can show by a preponderance of the evidence that the amount in controversy is greater than the jurisdictional amount." *Id.* at 1412. Once defendant has met this burden, "the plaintiff must be able to show that, as a matter of law, it is certain that he will not be able to recover more than the damages for which he has prayed in the state court complaint." *Id.* at 1411. The *De Aguilar* approach, however, is the minority view and has not been adopted by the Fourth Circuit. *See* Wright, Miller, and Cooper, *supra,* § 3702 (opining that the "few cases" that ignore the sum claim by the plaintiff's complaint are "erroneous" because they "would render the jurisdictional amount meaningless"). This court declines to adopt *De Aguilar.*

Even if the court were to employ the *De Aguilar* analysis, defendants have failed to show by a "preponderance of the evidence" that any plaintiff's compensatory damages could actually exceed $75,000 or that plaintiffs' limitation on their compensatory damages was made in bad faith. In a hearing before this court, plaintiffs represented to this court that they are only seeking three forms of relief: (1) the costs of a replacement system; (2) a notification program warning of the inadequacies of the system; and (3) punitive damages. Both parties agree that the most expensive method of replacing the system is around $7,000. (Home Manufacturers' Opp.Mem.

at 9.) Thus, although defendants speculate about possible scenarios derived from plaintiffs' complaint in which damages could exceed $75,000, defendants have not shown that the specific claim for relief sought by plaintiffs—the cost of replacing the system—would even approach $75,000. This is not a situation in which the court should ignore a plaintiff's prayer for less than the jurisdictional amount. The court has no basis to conclude that plaintiffs' limitation was made in bad faith and is contrary to the true value of the claim. Therefore, as stated by plaintiffs in their original complaint, no class member has alleged compensatory damages in excess of $75,000.

### 2. Punitive Damages

Although it is well-settled that potential punitive damages are to be considered when determining the jurisdictional amount, all circuits to consider the issue—including the Second, Fifth, Seventh, Ninth, Tenth, and Eleventh circuits—have held that any potential punitive damages award must be divided pro rata among the plaintiffs and may not be aggregated. *See, e.g., In re Ford Motor Co./Citibank (South Dakota), N.A.,* 264 F.3d 952, 963 (9th Cir. 2001) (citing circuit court decisions); *Cohen v. Office Depot, Inc.,* 204 F.3d 1069, 1073 (11th Cir.2000); *H & D Tire and Automotive–Hardware, Inc. v. Pitney Bowes, Inc.,* 227 F.3d 326, 329–30 (5th Cir.2000).

■ As noted above, the most expensive method of replacing the soil anchor tie-down system is estimated to be around $7,000. (Home Manufacturers' Opp.Mem. at 9.) Thus, the punitive damages would have to equal ten times the amount of compensatory damages per plaintiff in order for it to reach the $75,000 minimum. Although such a punitive damages award is not impossible, it is highly unlikely in

the context of a putative class action with an estimated 200,000 proposed class members. (Tie Down's Opp.Mem. at 18.) Allowing removal under these circumstances (where the alleged compensatory damages are around $7,000) would allow removal in almost any case in which a plaintiff seeks punitive damages. Given the general preference against removal, *see, e.g., Mulcahey,* 29 F.3d at 151, jurisdiction should not rest upon the metaphysical possibility of such an award of punitive damages.[5] Thus, although not legally impossible, defendants cannot show that a punitive damages award will cause the amount in controversy to exceed $75,000 under the legal certainty, preponderance of the evidence, or reasonable probability standards.

### 3. Injunctive Relief

Defendants also argue that the jurisdictional minimum may be met because the cost of injunctive relief would be more than $75,000. Plaintiffs are seeking prospective relief in the nature of notifying mobile home owners of the alleged inadequacies of the soil anchor/tie-down system. (Pls.Compl. at 19.) Plaintiffs estimate the number of plaintiffs to be around 200,000 and the cost of injunctive relief to be less than $1.00 per plaintiff. (Pls.Mem. at 19.) However, even if the cost is $0.50 per plaintiff, the cost of notifying 200,000 plaintiffs would be $100,000. Therefore, because the total cost of the injunctive relief to the defendants is likely to exceed $75,000, the critical question is whether the cost of injunctive relief is measured in terms of total potential costs to defendants or whether each plaintiff's claim must be considered separately.

The Fourth Circuit has not decided how the costs of prospective or injunctive relief should be calculated. Defendants urge the court to adopt the position of *Loizon v. SMH Societe Suisse de Microelectronics,* 950 F.Supp. 250, 252–53 (N.D.Ill.1996), in which plaintiffs sought injunctive relief requiring the defendants to notify all putative class members of the potential dangers of wearing a line of watches manufactured ·by defendants that contained a radioactive isotope. The court held that putative class members had a "common and undivided interest" in the injunctive relief sought—corrective advertising—because it would benefit the putative class as a whole. *Id.* However, in *In re Ford Motor Co./Citibank (South Dakota), N.A.,* 264 F.3d at 960, the Ninth Circuit rejected the *Loizon* view, holding that the value of each plaintiff's claim for injunctive relief must be evaluated separately. The court reasoned that by seeking a rebate program, plaintiffs were asserting an individual right rather than a "common and undivided interest." *Id.* The court explained that the cost of the injunctive relief may only be looked at from "either viewpoint" (plaintiff's or defendant's) when the plaintiffs truly possess a "common or undivided interest" in a single indivisible *res,* such as an estate, a piece of property, or an insurance policy. *Id.*

■ This finds the reasoning of the *In re Ford Motor Co./Citibank* persuasive in light of the Supreme Court's decision in *Zahn v. Int'l. Paper Co.,* 414 U.S. 291, 94

---

5. Moreover, plaintiffs have stated that they are "prepared to stipulate that no plaintiff's individual claim, including punitive damages, will exceed $75,000." (Pls.Mem at 17 n. 5.) At the oral argument, plaintiffs again offered to "waive any damages in excess of $75,000 per plaintiff." Although defendants correctly point out that these gestures are not binding and the amount in controversy must be determined from the complaint, a subsequent increase in the amount sought by plaintiffs would not be a good career move for plaintiffs' attorneys considering their anticipated future dealings with this court and would probably be barred by judicial estoppel.

S.Ct. 505, 38 L.Ed.2d 511 (1973). In *Zahn*, the Supreme Court held that in the context of a class action, the claims of plaintiffs seeking "separate and distinct claims" should not be aggregated. *Id.* at 508 (internal citations and quotation marks omitted). The non-aggregation rule in *Zahn* did not distinguish between claims for monetary and injunctive relief. *Id.* Here, each plaintiff is seeking the separate and distinct relief of notification of the dangers of the soil anchor/tie-down system based on their individual purchase of the system. This is not situation in which "several plaintiffs unite to enforce a single title or right, in which they have a common and undivided interest." *Id.* Moreover, it would be inconsistent to divide the punitive damages pro rata in a class action (as circuit courts confronting the issue have unanimously agreed is appropriate) without similarly dividing injunctive relief in the same manner. Thus, under the non-aggregation principle set forth in *Zahn*, the amount in controversy with respect to the injunctive relief is the cost to defendants of providing notification to each plaintiff. Although the parties dispute the exact amount the notification program would cost for each plaintiff, defendants do not argue that the cost on an individual basis would be significant in determining the amount in controversy.

### III. Conclusion

Accordingly, defendants cannot show by a legal certainty, preponderance of the evidence, or a reasonable probability that the amount in controversy exceeds $75,000 for any of the plaintiffs in this action. The amount in controversy includes each individual plaintiff's claim for compensatory damages, any punitive damages award divided pro rata per plaintiff, and the cost of injunctive relief for each plaintiff. First, plaintiffs have stipulated in their complaint that compensatory · damages per plaintiff will not exceed $75,000, and defendants

have not shown that this limitation was inaccurate or was made in bad faith. Plaintiffs' primary claim for compensatory damages, the replacement of the soil-anchor/tie-down system, is estimated to cost no more than $7,000. Second, the cost per plaintiff of the requested injunctive relief, a notification program, would be minimal on a pro rata basis. Third, although it is not legally impossible that punitive damages could cause the amount in controversy to exceed $75,000, the likelihood of such an award in the context of this class action is far too tenuous to form the basis for subject matter jurisdiction in a case that has been removed.

It is therefore,

**ORDERED,** that this case be **REMANDED** to the Court of Common Pleas for Berkeley County and that this court accepts plaintiffs' waiver of all damages (compensatory, injunctive, and punitive) in excess of $75,000 for any individual plaintiff or class member.

**AND IT IS SO ORDERED.**