Ian T. JONES and Chris S. Duvall, individually and on behalf of all others similarly situated in the State of South Carolina, Plaintiffs,

v.

ALLSTATE INSURANCE COMPANY and Allstate Indemnity Company, Defendants.

No. 2:02–0797–18.

United States District Court,
D. South Carolina,
Charleston Division.

April 17, 2003.

Mark C. Janenbaum, Fred Thompson, III, Charleston, WV, for plaintiffs.

Thomas C. Salane, Columbia, WV, for defendant.

## ORDER

NORTON, District Judge.

This matter is before the court on plaintiffs' motion to remand for lack of subject matter jurisdiction.

### I. Background

Plaintiffs Jones and Duvall were insured under Allstate [1] automobile insurance policies in 2001 when they were involved in accidents that caused property damage to their vehicles. (Am.Compl. ¶¶ 34–35.) When plaintiffs filed their claims with Allstate, the Allstate adjuster determined plaintiffs' claims based on what their repairs would cost, but "did not consider, reimburse, or compensate Plaintiffs for the

---

1. For convenience, this opinion refers to defendants collectively as "Allstate."

inherent diminished value to their vehicles." (Am.Compl.¶ 36.) Plaintiffs allege that "damaged vehicles, though subsequently repaired, have a lesser value than a similar vehicle with no damage history" and their Allstate insurance contracts should be interpreted as providing coverage for such "diminished value." (Am. Compl.¶ 38.) As a result, plaintiffs filed this proposed class action in South Carolina state court "on behalf of all Allstate policyholders in South Carolina who, from February 1, 1996 until the trial of this cause ..., sustained unibody structure and/or frame damage to a covered vehicle owned by him, made a claim for vehicle damage pursuant to their automobile insurance policy, and who, either directly or indirectly, did not receive compensation for the diminished market value of that covered vehicle after Allstate elected to make repairs on said vehicle." (Am.Compl.¶ 1.) In their Amended Complaint, plaintiffs allege the following causes of action: (1) Breach of Express Contract; (2) Breach of Covenant of Good Faith and Fair Dealing in the Performance of Insurance Contracts; (3) Unfair of Deceptive Insurance Practice; (4) Restitution; (5) Voluntary Payment and Mistake of Fact; (6) Breach of Fiduciary Relationship; and (7) Declaratory and Injunctive Relief. (Am. Compl.¶¶ 44–73.) On March 11, 2002, Allstate removed the case based on diversity jurisdiction. Plaintiffs then filed a motion to remand for lack of subject matter jurisdiction.

## II. Law/Analysis

■■ Allstate removed this case based on diversity jurisdiction under 28 U.S.C. § 1332. The diversity of citizenship of the parties is not in dispute; the named plaintiffs are citizens of South Carolina and Allstate is incorporated and headquartered in Illinois. The contested issue for purposes of diversity jurisdiction is whether the "matter in controversy exceeds

$75,000, exclusive of interest and costs." 28 U.S.C. § 1332 (West 2003). "When two or more plaintiffs, having separate and distinct demands, unite for convenience and economy in a single suit, it is essential that the demand of each be of the requisite jurisdictional amount; but when several plaintiffs unite to enforce a single title or right, in which they have a common and undivided interest, it is enough if their interests collectively equal the jurisdictional amount." *Zahn v. Int'l Paper Co.*, 414 U.S. 291, 295, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973) (internal citations and quotation marks omitted). Thus, in a class action, if there are "separate and distinct claims by two or more plaintiffs, the determination of the amount in controversy is based upon each plaintiff's claims and not upon the aggregate." *Glover v. Johns–Manville Corp.*, 662 F.2d 225, 231 (4th Cir.1981) (*citing Zahn*, 414 U.S. at 293–96, 94 S.Ct. 505). However, if any named representative plaintiff has a claim in excess of $75,000, a federal court has jurisdiction over the entire class based on 28 U.S.C. § 1367, the supplemental jurisdiction statute. *Rosmer v. Pfizer*, 263 F.3d 110, 122 (4th Cir.2001). Therefore, under *Zahn*, as interpreted by *Rosmer*, the requisite amount in controversy for diversity jurisdiction is met in a class action if at least one of the named plaintiffs has a claim exceeding $75,000. *Id.*

■■ The first issue is the effect of plaintiffs' disclaimer on damages, which provides as follows:

"The total amount in controversy as to each Plaintiffs and each individual member of the Class does not exceed seventy-four thousand dollars ($74,000) each, exclusive of interests and costs. Plaintiffs therefore disclaim any damages, injunctive relief and/or restitution greater than seventy-four thousand [dollars]

($74,000) per Plaintiffs or individual Class Member."

(Am.Compl.¶ 10.) As a general rule, the sum claimed by a plaintiff in his complaint determines the jurisdictional amount, and a plaintiff may plead less than the jurisdictional amount to avoid federal jurisdiction. *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 294, 58 S.Ct. 586, 82 L.Ed. 845 (1938) ("If [the plaintiff] does not desire to try his case in the federal court he may resort to the expedient of suing for less than the jurisdictional amount, and though he would be justly entitled to more, the defendant cannot remove."); *Spann v. Style Crest Prods., Inc.*, 171 F.Supp.2d 605, 608–09 (D.S.C.2001); Charles A. Wright, Arthur R. Miller, and Edward H. Cooper, 14A *Federal Practice and Procedure* § 3702 [hereinafter *"Wright & Miller"*] ("Under well-settled principles, the plaintiff is the master of his or her claim; if plaintiff chooses to ask for less than the jurisdictional amount, only the sum actually demanded is in controversy.").[2] Plaintiffs' disclaimer therefore effectively limits their claim for damages to less than the jurisdictional amount. Plaintiffs also seek restitution for monies that Allstate allegedly retained by failing to pay diminished value payments under their insurance policies. Plaintiffs' restitution claims are theoretically distinct from their claims for damages because they are based on the amount that Allstate was improperly enriched rather than the amount that plaintiffs were damaged. However, the

restitution claims seek monetary relief for past inequities and therefore are also subject to plaintiffs' disclaimer.

Plaintiffs' attempt to discount the value of their requested injunctive relief, however, is more problematic. Plaintiffs are seeking "an order of this Court ordering Allstate to immediately cease all acts complained of herein and enjoining Allstate from continuing to refuse to properly pay and notify members of the Class of their respective rights under the policies in question." (Am. Compl. Prayer for Relief ¶ B.) This request for prospective injunctive relief could require Allstate to make diminished value payments and incur compliance costs after this lawsuit is concluded. Unlike plaintiffs' claims for damages and restitution, which would result in monetary recovery for Allstate's past conduct, the value of this future injunctive relief would not be part of any monetary judgment in this case. Thus, plaintiffs' disclaimer does not effectively limit the value of such prospective injunctive relief. Accordingly, the court must determine whether plaintiffs' Complaint—including the claims for damages, restitution, and injunctive relief—cause the amount in controversy in this case to exceed $75,000. *See Spann*, 171 F.Supp.2d at 607 n. 3 (noting that when a complaint only limits part of the demand, the total amount in controversy has not been specified and must be evaluated by the court).

---

**2.** In *Spann*, this court declined to adopt an approach under which the court undertakes its own independent review of the amount in controversy despite a specific limitation on damages in the plaintiff's complaint. 171 F.Supp.2d at 608–09. With respect to potential procedural gaming by plaintiffs, this court has noted that "a subsequent increase in the amount sought by plaintiffs would not be a good career move for plaintiffs' attorneys considering their anticipated future dealings with this court and would probably be barred by

judicial estoppel." *Id.* at 610 n. 5. To further prevent the potential for manipulation after remand, this court strongly suggests that any plaintiff wishing to limit a claim for monetary damages file a pre-removal sworn affidavit of both the plaintiff and counsel disclaiming any monetary recovery in excess of $75,000. *See McCoy v. Erie Ins. Co.*, 147 F.Supp.2d 481, 494 (S.D.W.Va.2001) (noting that "[a] binding pre-removal stipulation should alleviate unseemly forum gaming").

A defendant who has removed an action to federal court has the burden of establishing subject matter jurisdiction. *Mulcahey v. Columbia Organic Chems. Co.,* 29 F.3d 148, 151 (4th Cir.1994). On a motion to remand, courts should construe removal jurisdiction strictly in favor of state court jurisdiction. *Id.* "If federal jurisdiction is doubtful, a remand is necessary." *Id.* The Fourth Circuit has not decided the precise standard on a motion to remand for determining the value of an unspecified damage claim. *See Rota v. Consolidation Coal Co.,* 175 F.3d 1016 n. 4 (4th Cir.1999) (UNPUBLISHED TABLE OPINION) (noting that the proper standard for assessing the value of an unspecified damage claim is subject to "debate" and declining to adopt a particular standard). Courts have required the removing party to meet one of several different standards to show that the amount in controversy has been satisfied: (1) "legal certainty," *White v. J.C. Penney Life Ins. Co.,* 861 F.Supp. 25, 27 (S.D.W.V.1994); (2) "preponderance of the evidence," *Tapscott v. MS Dealer Service Corp.,* 77 F.3d 1353, 1357 (11th Cir.1996); (3) "reasonable probability," *Reason v. General Motors Corp.,* 896 F.Supp. 829, 834 (S.D.Ind.1995); and (4) inverse legal certainty, *Hale v. Billups of Gonzales, Inc.,* 610 F.Supp. 162, 163–64 (D.La.1985); *Woodward v. Newcourt Commercial Fin. Corp.,* 60 F.Supp.2d 530, 531 (D.S.C.1999) ("[T]he defendant must show that it does not appear to a legal certainty that the removed claim is for less than the jurisdictional amount."). This court has declined to apply the "inverse legal certainty" standard because it would shift the burden of showing grounds for removal from the defendant to the plaintiff. *Spann,* 171 F.Supp.2d at 607. However, this court need not adopt a particular standard in this case because Allstate has not shown to a "legal certainty," "by a preponderance of the evidence," or to a "reasonable probability" that plaintiffs' complaint causes the total amount in controversy to exceed $75,000.

Allstate makes two arguments as to why the jurisdictional amount is satisfied. First, it argues that the value of the requested declaratory and injunctive relief, when measured from the viewpoint of Allstate, satisfies the jurisdictional amount regardless of the number of named plaintiffs or putative class members. The first issue raised is the question whether declaratory and injunctive relief may be measured from Allstate's viewpoint. "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Washington State Apple Adver. Com'n,* 432 U.S. 333, 347, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977) (internal citations omitted). As Allstate correctly points out, the Fourth Circuit has held that the amount in controversy may be calculated as the "value to either party." *Gov't Emp. Ins. Co. v. Lally,* 327 F.2d 568, 569 (4th Cir.1964). This approach is commonly referred to as the "either-viewpoint" rule or the "either-party" rule. *See Gonzalez v. Fairgale Properties Co., N.V.,* 241 F.Supp.2d 512, 517 (D.Md.2002). However, there was only one plaintiff in *Lally.* 327 F.2d at 569. The Fourth Circuit has not considered whether or how this "either-viewpoint" rule would apply in the context of a putative class action or other multiple-plaintiff case in light of the non-aggregation principles set forth in *Zahn,* 414 U.S. at 293–96, 94 S.Ct. 505.

Other courts have expressly addressed the application of the "either-viewpoint" rule in a class-action context in light of the non-aggregation rule set forth in *Zahn.* The Ninth Circuit has "acknowledged the inherent conflict between the 'either viewpoint' rule and the non-aggregation rule when calculating the amount in

controversy in class action suits seeking equitable relief, and determined that the former must yield:" *In re Ford Motor Co./Citibank (South Dakota), N.A.,* 264 F.3d 952, 958–959 (9th Cir.2001) (citing *Snow v. Ford Motor Co.,* 561 F.2d 787, 788–91 (9th Cir.1977)).[3] The Seventh Circuit reconciled the "either-viewpoint" rule and the non-aggregation rule in the following manner:

> Whatever the form of relief sought, each plaintiff's claim must be held separate from each other plaintiff's claim from both the plaintiff's and the defendant's standpoint. The defendant in such a case is deemed to face multiple claims for injunctive relief, each of which must be separately evaluated. The question then becomes ... whether each plaintiff is asserting an individual right or, rather, a right to an undivided interest in something. [When it is the former,] [t]he test, we repeat, is the cost to each defendant of an injunction running in favor of one plaintiff; otherwise the no-naggregation rule would be violated.

*In re Brand Name Prescription Drugs Antitrust Litig.,* 123 F.3d 599, 609 (7th Cir.1997) (internal citation omitted). Because the Fourth Circuit has not carved out any exception to the "either-viewpoint" rule for class actions or other multiple-plaintiff cases, this court adopts the Seventh Circuit's approach in *Brand Name,* which best reconciles the "either-viewpoint" rule with the non-aggregation rule established in *Zahn.*[4]

■ Here, Allstate attached to its Notice of Removal an affidavit from Tom DiNardo, its Auto Claims Process Specialist, alleging that it would cost Allstate more than $75,000 to comply with this request for declaratory and injunctive relief. Specifically, DiNardo averred that, if plaintiffs' requests for declaratory and injunctive relief were granted, Allstate would be required to hire new claims adjusters to pay diminished value claims and develop procedures and systems with regard to such claims. The DiNardo affidavit does not show that Allstate would incur such costs if an injunction were issued in favor of one plaintiff rather than an entire class. Rather, Allstate would incur the administrative costs identified by DiNardo only if an injunction were issued in favor of the entire proposed class. In other words, the named plaintiffs are seeking to bring this action on behalf of all Allstate policyholders enjoining Allstate from refusing to pay diminished value payments in the future. If such a class action were certified and were successful, perhaps Allstate would be required to change its claims processing system and hire new claims adjusters. However, Allstate has not

---

3. The United States Supreme Court granted a writ of certiorari in the *In re Ford Motor Co./Citibank* case on the issue "[w]hether the amount-in-controversy requirement of the diversity statute is satisfied where a class representative seeks an injunction that would cost the defendant more than $75,000 to implement whether the injunction applies to one plaintiff or all class members." Brief for Petitioners at i, *Ford v. McCauley,* 534 U.S. 1126, 122 S.Ct. 1063, 151 L.Ed.2d 966 (2002). However, the Court later dismissed the writ of certiorari as improvidently granted. *Ford v. McCauley,* 537 U.S. 1, 123 S.Ct. 584, 154 L.Ed.2d 1 (2002).

4. Although in *Spann* this court cited the Ninth Circuit's opinion in *In re Ford Motor Co./Citibank* with approval, it did so in the context of holding that separate and distinct claims for injunctive relief could not be aggregated. 171 F.Supp.2d at 610–11. This court's opinion in *Spann* should not be interpreted as having adopted the portion of *In re Ford Motor Co./Citibank* that categorically rejects the "either-viewpoint" rule in the context of class actions. As explained above, the court's approach in *Brand Name* is the better articulation of the applicable standard because it retains the "either-viewpoint" rule in class-actions while not abandoning the "non-aggregation" principle.

shown that it would be required to adopt a new claims system and hire new adjusters if one of the named plaintiffs were to obtain an injunction ordering Allstate to notify and pay him diminished value payments on his insurance policy. *Cf. Brand Name,* 123 F.3d at 610 (holding in the context of a price-fixing claim that the request for injunctive relief did not cause the amount in controversy to be met because "the grant of an injunction in favor of a single plaintiff would be unlikely to impose a heavy cost on any of the defendants; each defendant could continue in its own way of pricing with respect to all other plaintiffs").

Plaintiffs cite *McCoy v. Erie Ins. Co.,* 147 F.Supp.2d 481, 493–94 (S.D.W.Va. 2001), a "diminished-value" case in which the court held that the amount in controversy was met because the requested injunction would cost at least one of the defendants more than $75,000. The *McCoy* court explained in a footnote that it "has heeded *Zahn* and *Snyder* based on the finding the administrative cost of the injunction to at least one of the corporate Defendants running in favor of even McCoy herself exceeds the jurisdictional amount." *Id.* at 494 n. 14 (citing *In re Microsoft Corp. Antitrust Litig.,* 127 F.Supp.2d 702, 719 (D.Md.2001)). The "administrative cost" referenced by the court in *McCoy* apparently was the same as identified in this case—new adjusters and claims procedures. 147 F.Supp.2d at 493. Again, this court acknowledges that Allstate could incur such administrative costs in excess of $75,000 if an injunction were granted in favor of the proposed class of policyholders; however, this court does not agree that an injunction running in favor of one plaintiff would cause Allstate to incur administrative costs in excess of $75,000.

Allstate also cites *In re Microsoft Corp. Antitrust Litig.,* 127 F.Supp.2d 702, 705 (D.Md.2001), in which the plaintiffs requested an injunction ordering Microsoft to redesign its Windows operating system software to remedy alleged antitrust violations. 127 F.Supp.2d at 718. Applying the *Brand Name* test, the court concluded that the requested injunctive relief "could not be effected without the expenditure of million of dollars if granted even to one plaintiff." *Id.* at 719. The *Microsoft* case, however, is distinguishable from this case because an injunction ordering Microsoft to redesign its software would cost Microsoft basically the same amount whether it had to be done on behalf of one plaintiff or thousands of plaintiffs. *Id.* at 718–19. Here, plaintiffs are not seeking an injunction that would necessarily require an expensive undertaking such as the redesign of computer software. Instead, the costs identified by Allstate are administrative costs from being forced to adjust its claims system. As explained above, Allstate has not shown that it would be forced to undergo such a systematic change if an injunction were issued only to one plaintiff rather than the entire proposed class. Accordingly, *Microsoft* is factually distinguishable from this case because the requested injunctive relief in *Microsoft* would have imposed fixed costs of more than $75,000 on Microsoft even if an injunction were granted running in favor of one plaintiff, whereas the administrative costs in this case are contingent on a class-wide injunction that would force Allstate to change its business practices. Thus, Allstate has not met its burden of showing that if an injunction were issued running in favor of one plaintiff, it would incur costs in excess of $75,000.

■■■ Second, Allstate argues that the entire value of the requested restitution [5]

---

**5.** Allstate refers to this claim as one for "disgorgement."

relief may be attributed to each putative class member because it is a common and undivided interest. "[I]t is the nature of the right asserted, not that of the relief requested, that determines whether the claims of multiple plaintiffs may be aggregated." *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1264 (11th Cir.2000) (internal citations omitted). "The presence of a 'common and undivided interest' is rather uncommon, existing only when the defendant owes an obligation to the group of plaintiffs as a group and not to the individuals severally." *Id.* at 1262. The paradigm "common and undivided interest" cases are when the plaintiffs assert claims to a piece of land, a trust fund, an estate, an insurance policy, a lien, or an item of collateral, which they claim as common owners or in which they share a common interest arising under a single title or right. *Gilman v. BHC Secs., Inc.*, 104 F.3d 1418, 1424 (2d Cir.1997).

Plaintiffs' claims for restitution are separate and distinct in nature because each plaintiff is seeking to recover the amount that defendant unjustly gained on each individual insurance policy. The restitution sought is not a common fund on behalf of the entire class, but rather plaintiffs are seeking "to enforce the separate and distinct rights arising from their respective insurance policies with an insurer." *Morrison*, 228 F.3d at 1271. As a result, plaintiffs' claims for restitution should not be aggregated for purposes of determining the amount in controversy. *McCoy* 147 F.Supp.2d at 490–91 (holding that claims for unjust enrichment and disgorgement may not be aggregated because they are separate and distinct); *Morrison*, 228 F.3d at 1264 (11th Cir.2000) (holding in "diminished value" case that a prayer for relief "under an equitable theory of unjust en-

richment does not convert separate and distinct claims for damages into a fund in which the class members have a common and undivided interest."). When considered separately, each plaintiff's claim for restitution under his individual insurance policy is well below $75,000.

In sum, Allstate has failed to show, by any standard, that the total value of one named plaintiff's claims for compensatory damages, restitution, and injunctive relief exceeds $75,000. First, Allstate does not dispute that the compensatory damages to one plaintiff for past "diminished value" would be far below $75,000. Second, any restitution awarded to a plaintiff on his policy would be similar to compensatory damages and would not approach $75,000.[6] Third, Allstate has not shown that it would incur any significant administrative costs for an injunction running in favor of one plaintiff. Thus, the total value of each plaintiff's claims, from either party's viewpoint, is less than $75,000.

## III. Conclusion

It is therefore,

**ORDERED**, that plaintiffs' motion to remand be **GRANTED**.

**AND IT IS SO ORDERED.**

---

**6.** The compensatory damages and restitution claims likely would overlap and require an election of remedies.