Luis Y. **MARTINEZ**, Plaintiff,

v.

**BAC HOME LOANS SERVICING, LP**, Defendant.

**Civil Action No. SA–09–CA–951–FB.**

United States District Court,
W.D. Texas,
San Antonio Division.

Sept. 24, 2010.

Molly Ann Rogers, Texas Rio Grande Legal Aid Inc., Austin, TX, for Plaintiff.

C. Charles Townsend, Akerman Senterfitt, LLP, Dallas, TX, for Defendant.

### ORDER CONCERNING PLAINTIFF'S MOTION TO REMAND

FRED BIERY, Chief Judge.

Before the Court is Plaintiff's Opposed Motion to Remand (docket # 4), Defendant BAC Home Loans Servicing, LP's Response to Plaintiff's Motion to Remand (docket # 7), and Plaintiff's Reply in Support of Plaintiff's Opposed Motion to Remand (docket # 9). Plaintiff asserts this Court lacks jurisdiction over his case because it does not arise under federal law and the amount in controversy requirement has not been met for diversity jurisdiction purposes. Defendant contends the only dispute in this matter is whether the value of the home is the proper legal measure of the amount in controversy. Although defendant removed the case on federal question and diversity grounds, defendant states the Court need not reach the federal question issue because jurisdiction based on diversity is present. In

reply, plaintiff notes the parties agree on the legal standards to be applied in evaluating the motion to remand and that the correct valuation of the amount in controversy is the value of the property from the plaintiff's viewpoint. The disagreement occurs on how the amount in controversy is properly measured—is it plaintiff's equity in the home or the fair market value of the home? Plaintiff believes it is his equity while defendant maintains it is the fair market value.

### Factual Background

Plaintiffs filed suit in the 166th Judicial District Court of Bexar County, Texas, along with an application for a temporary restraining order, temporary injunction and permanent injunction. Plaintiff asserts he received a federally insured loan in the amount of $86,166 from BSM Financial, LP to purchase a home in St. Hedwig, Texas. The Deed of Trust provided that Mortgage Electronic Registration Systems, Inc. (hereinafter MERS) was the beneficiary and nominee for the lender and lender's successors and assigns. The loan servicing rights were transferred to Taylor Bean and Whitaker Mortgage Company (hereinafter TBW) shortly after the origination of the loan.

In February of 2009, plaintiff was laid off from his job as a mechanic. He contacted TBW to discuss his options to prevent foreclosure. In response, a TBW representative sent plaintiff an application for a loan modification. Plaintiff completed the application and returned it on May 5, 2009. He resubmitted the application on May 27, 2009, after failing to receive a response from the prior submission. In lieu of a response, plaintiff received a letter, in July of 2009, from TBW stating "The mortgage for the property in which you are living is about to be foreclosed." On August 4, 2009, the Federal Housing Administration suspended TBW and several weeks later TBW filed for bankruptcy.

On August 13, 2009, plaintiff received a Notice of Trustee's Sale listing TBW as the mortgage servicer and MERS as the mortgagee. The notice set the sale date for October 6, 2009.

Plaintiff states that on or around August 31, 2009, in response to the collapse of TBW, the Government National Mortgage Association (hereinafter "Ginnie Mae") published materials for borrowers with loans it had "securitized." The materials explained FHA insured loans were likely included in a Ginnie Mae mortgage backed security, and Bank of America, Ginnie Mae's master sub-servicer, had taken over the servicing of those TBW loans. Borrowers whose servicing had been transferred to Bank of America were to expect to receive a letter from BAC Home Loans Servicing, LP.

Plaintiff further states he did not receive a letter from BAC but rather a Notice of Trustee's Sale listing BAC Home Loans Servicing, LP f/k/a Countrywide Home Loans Servicing, LP as the mortgage servicer and BAC Home Loans Servicing, LP as the current mortgagee. The date for the trustee's sale was set for November 3, 2009. Plaintiff, in mid-October, found new employment and contacted the defendant again to apply for a loan modification, but defendant's representative denied him the opportunity to do so. Plaintiff asserts that on or about September 25, 2009, defendant recorded an instrument in the Bexar County Real Property Records "purporting to assign the Note and Deed of Trust associated with this loan out of the MERS system to 'BAC Home Loans Servicing, LP.'"

Plaintiff asserts a cause of action for breach of contract claiming neither TBW nor BAC complied with the regulations promulgated by the Secretary of Housing and Urban Development, and therefore, foreclosure is not an available remedy at

this time. Specifically, plaintiff points to language which provides " '[I]t is the intent of the Department that no mortgagee commence foreclosure acquisition of a property until the requirements of this subpart have been followed.' " The subpart, according to plaintiff, provides as follows:

- Take those appropriate actions which can reasonably be expected to generate the smallest financial loss to the Department ... include[ing], but not limited to ... partial claims under § 203.471 and 203.614, and recasting of mortgages under § 203.616; See 24 C.F.R. § 203.501.
- Make reasonable efforts to arrange or hold a face-to-face interview with the homeowner before three monthly installments on the mortgage are unpaid; 24 C.F.R. § 203.604.
- For all loans in default for three months, document that the lender has considered all loss mitigation options to determine which, if any, are appropriate before initiating foreclosure; 24 C.F.R. § 203.605.

Plaintiff maintains the only loss mitigation effort undertaken by TBW was to send plaintiff the loan modification application. TBW did not inform plaintiff of other loss mitigation options or make any effort to hold a face-to-face interview.

Plaintiff contends BAC, as TBW's successor, also failed to undertake any of the required loss mitigation efforts. Defendant BAC did provide plaintiff's counsel with the address and phone number of its loss mitigation department on October 15, 2009, but plaintiff was not given an opportunity, when he called the number, to submit written documentation of his qualifications after providing defendant information about his income and expenses. Plaintiff asserts BAC has not met a condition precedent to foreclosure of his loan.

Plaintiff also asserts section 3.301 of the Texas Business and Commerce Code has been violated. It is plaintiff's belief the holder of his note is Ginnie Mae and not defendant BAC. Therefore, BAC's mere possession of the deed of trust without the authority to enforce the note does not give BAC authority to foreclose on his property. Plaintiff seeks a temporary restraining order, temporary and permanent injunctive relief prohibiting defendant from foreclosing on his home. The temporary restraining order was granted while the case was pending in state court.

### Motion to Remand

In the motion to remand, plaintiff maintains his claim does not give rise to federal question jurisdiction because it is a simple state law breach of contract claim. Although defendant recognized in its notice of removal that plaintiff's claim is a state law breach of contract claim which turns on a construction of federal law, plaintiff argues courts faced with similar claims have remanded the cases. *Buis v. Wells Fargo Bank, N.A.*, 401 F.Supp.2d 612 (N.D.Tex.2005); *Leggette v. Washington Mut. Bank, F.A.*, No. 3:03–CV–2909–D, 2005 WL 2679699 (N.D.Tex. Oct. 19, 2005). Therefore, jurisdiction cannot be based on a federal question.

With respect to diversity jurisdiction, plaintiff contends the amount in controversy is not stated in the petition and is not present in this case. Although defendant alleges the value of plaintiff's home is in excess of $75,000, this valuation of the case is incorrect. Plaintiff states the correct amount in controversy is the value of the property from the plaintiff's viewpoint, or in other words, plaintiff's equity in the property. Plaintiff is not seeking to void defendant's lien on the property but is trying to save his home by receiving the benefit of all required loss mitigation requirements. Plaintiff explains:

If Defendant is permitted to foreclose without performing required loss mitigation actions, it will receive funds to pay off the balance of the loan from the foreclosure at the time of sale. If Defendant is required to perform loss mitigation prior to foreclosure, it will either (a) work out a loan modification or reinstatement with Plaintiff and the balance of the loan balance will be paid off over time; or (b) foreclose subsequent to engaging in attempted loss mitigation, and the loan balance will be paid off using the proceeds of the sale. In other words, the only potential monetary loss to Defendant created by this lawsuit is reflected in any potential loss created by a decrease in the home value pending a postponement of the foreclosure, or transactional costs relative to performing loss mitigation. No facts or evidence were offered to show that this amount exceeds $75,000.

*Plaintiff's Opposed Motion to Remand,* docket # 4 at pages 7–8, numbered items 22 and 23.

In response, defendant explains that although removal was based on federal question and diversity grounds, this Court need not reach the federal question issue because diversity jurisdiction exists. Defendant admits the petition in this case does not allege a specific amount of damages, and therefore, defendant has the burden of proving the amount in controversy element is satisfied. Defendant believes this burden is satisfied based on *Leininger v. Leininger,* 705 F.2d 727 (5th Cir.1983), which stands for the proposition that the amount in controversy in an action seeking injunctive relief is the value of the object of the litigation. Here the value of plaintiff's home (i.e. the object of the litigation) exceeds the $75,000 threshold, and plaintiff has all but conceded the truth of this fact by acknowledging, in his motion to remand, his home is worth at least $85,230. Plaintiff's primary contention—that the amount of equity in his home is the proper measure of the amount in controversy—is without support. The proper measure of the amount in controversy is the value of the property at issue when the right the plaintiff seeks to protect or enforce is the right to peaceful possession of a home.

Plaintiff in this case is seeking to enjoin the defendant from foreclosing his home and as a result is seeking to protect his rights to his property not his right to home equity. The cases plaintiff relies on to support his home equity theory do not involve the enjoining of a foreclosure. Plaintiff's attempt to characterize the object of his suit as one to receive the benefit of required loss mitigation activities also fails because he does not request that relief in his petition and he cites no authority to support his assertion that only one right can be valued for purposes of the amount in controversy. The bottom line is plaintiff is seeking to protect his right to the "quiet and continued enjoyment of his property," and the best way to measure the value of that right, at least for determining the amount in controversy, is the fair market value of the property.

In reply, plaintiff continues to maintain that because he does not seek to void the existing lien on his property, the value, for amount in controversy purposes, is his equity in the home. Plaintiff contends the only Fifth Circuit authority cited by the defendant, *Frontera Transp. Co. v. Abaunza,* 271 F. 199 (5th Cir.1921), actually supports his position while defendant's Ninth Circuit authority is inapplicable, and the district court cases from Pennsylvania, Alabama and Minnesota are distinguishable. Plaintiff argues Texas law should be applied where the measure of damages in a suit for wrongful foreclosure is the difference between the value of the property on the date of foreclosure and the remaining balance due on the indebtedness, *i.e.*

plaintiff's equity. Plaintiff also points to district court cases from Alabama and Florida which support his equity as the proper measure position and argues that Fifth Circuit cases support, by analogy, this same position.

On September 20, 2010, defendant filed a supplement to its response to plaintiff's motion to remand (docket # 13). The response was filed to direct this Court's attention to a more recent Fifth Circuit decision which defendant claims supports its position—*Nationstar Mortgage, LLC v. Knox,* No. 08–60887, 351 Fed.Appx. 844 (5th Cir. Aug. 25, 2009). Defendant explains the court rejected the plaintiff's argument in that case that the amount in controversy was not satisfied. The court found " 'the value of the property controls the amount in controversy.' " *Supplement,* docket # 13 at pages 1–2. Defendant maintains the logic of *Nationstar Mortgage* requires the plaintiff's motion to remand be denied.

### Standard of Review

■ It is well established in actions in which declaratory or injunctive relief is sought, the amount in controversy for jurisdictional purposes is measured by the direct pecuniary value of the right which the plaintiff seeks to enforce or protect or the value of the object which is the subject matter of the suit. *Hunt v. Washington State Apple Adv. Comm'n,* 432 U.S. 333, 347, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977); *Seaboard Fin. Co. v. Martin,* 244 F.2d 329, 331 (5th Cir.1957); *Burks v. Texas Co.,* 211 F.2d 443, 445 (5th Cir.1954); *see also Hartford Ins. Group v. Lou–Con Inc.,* 293 F.3d 908, 910 (5th Cir.2002) ("The amount is controversy is 'the value of the right to be protected or the extent of the injury to be prevented.' ") (quoting *Leininger v. Leininger,* 705 F.2d 727, 729 (5th Cir. 1983)). "[W]hen the validity of a contract or a right to property is called into question in its entirety, the value of the proper-

ty controls the amount in controversy." *Nationstar Mortg. LLC v. Knox,* 351 Fed. Appx. 844 848 (5th Cir.2009) (quoting *Waller v. Prof'l Ins. Corp.,* 296 F.2d 545, 547–48 (5th Cir.1961)).

■ When the plaintiff does not allege in the state court petition a specific amount of damages, as is the case here, the defendant removing the case must demonstrate by a preponderance of the evidence the value of the plaintiff's claim meets the jurisdictional requirement. *Garcia v. Koch Oil Co.,* 351 F.3d 636, 638–39 (5th Cir.2003); *DeAguilar v. Boeing,* 47 F.3d 1404, 1410 (5th Cir.), *cert. denied,* 516 U.S. 865, 116 S.Ct. 180, 133 L.Ed.2d 119 (1995). The defendant's burden may be satisfied in two ways:

> First, jurisdiction will be proper if "it is facially apparent" from the plaintiffs' complaint that their "claims are likely above [$75,000]." *Allen [v. R & H Oil & Gas Co.,]* 63 F.3d [1326,] 1335 [ (5th Cir.1995).]* If the value of the claims is not apparent, then the defendants "may support federal jurisdiction by setting forth the facts-[either] in the removal petition [or] by affidavit-that support a finding of the requisite amount." *Id.*

Once this burden is satisfied, the only way a plaintiff can then effectuate a remand to state court on amount in controversy grounds is to show as a matter of law it is certain his recovery will not reach the jurisdictional minimum for removal. *DeAguilar,* 47 F.3d at 1412.

■ The plaintiff can show his claims are actually less than the jurisdictional amount by filing a binding stipulation or affidavit with the petition prior to removal stating he does not seek and will not accept any award in excess of the jurisdictional amount. *Allen,* 63 F.3d at 1335; *DeAguilar,* 47 F.3d at 1412. Such a stipulation will limit the amount in controversy in his case in an unambiguous manner.

However, if the plaintiff does not so stipulate and the amount in controversy is ambiguous at the time of removal, the Court may consider a post-removal stipulation to clarify the ambiguity by determining the amount which was in controversy as of the date of removal. *Gebbia v. Wal–Mart Stores, Inc.*, 233 F.3d 880, 883 (5th Cir. 2000); *Asociacion Nacional de Pescadores v. Dow Quimica de Colombia S.A.*, 988 F.2d 559, 565 (5th Cir.1993). Here, plaintiff did not file a binding stipulation or affidavit stating he does not seek and will not accept any award in excess of the jurisdictional amount.

### Analysis

As set forth previously, plaintiff asserts a breach of contract cause of action claiming foreclosure is prohibited when a lender has not complied with HUD regulations, in this case HUD regulated loss mitigation strategies prior to acceleration and foreclosure. Plaintiff also alleges it is Ginnie Mae and not the defendant who holds the note and therefore, BAC cannot foreclose on his property. Plaintiff does not seek to set aside the deed of trust and does not ask for monetary damages. Instead, the only relief sought by plaintiff is an injunction prohibiting foreclosure. Plaintiff asserts:

> [t]o allow Defendant to foreclose on the home would result in irreparable injury to Plaintiff for which there is no adequate remedy at law. Pursuant to Section 65.011 and Section 65.041 of the Civil Practice and Remedies Code, Plaintiff requests a temporary restraining order, and a temporary and permanent injunction without the posting of a bond which prohibits Defendant or any of their attorneys, agents, officers, employees or contractors from foreclosing on Plaintiff's home.

*Plaintiff's Original Petition* at page 8 attached to the Notice of Removal. This assertion is followed by plaintiff requesting the following relief:

> a. temporary restraining order, temporary and permanent injunctive relief as request herein;
>
> b. court costs; and
>
> c. any other relief to which Plaintiffs may be entitled.

*Id.*

■ Had plaintiff brought suit for wrongful foreclosure, there is no question the measure of damages would be "the difference between the value of the property in question at the date of foreclosure and the remaining balance due on the indebtedness." *Farrell v. Hunt*, 714 S.W.2d 298, 299 (Tex.1986); *Houston Omni v. Southtrust Bank Corp.*, No. 01–07–00433–CV, 2009 WL 1161860 at *7 (Tex.App.-Houston [1st Dist.] Apr. 30, 2009, no pet.) ("the measure of damages for wrongful foreclosure is lost equity, that is, the difference between the value of the property in question at the date of foreclosure and the remaining balance due on the indebtedness"); *C & K Invests. v. Fiesta Group, Inc.*, 248 S.W.3d 234, 254 (Tex.App.-Houston [1st Dist.] 2007, no pet.) (return of the property or damages may be requested when improper foreclosure occurs; "correct measure of damages is the difference between the value of the property in question at the date of foreclosure and the remaining balance due on the indebtedness"). However, such an event has not occurred nor can plaintiff recover under this theory. *Baker v. Countrywide Home Loans, Inc.*, No. 3:08–CV–0916–B, 2009 WL 1810336 at *4 (N.D.Tex. Jun. 24, 2009) (recognizing lost equity as the measure of damages for a wrongful foreclosure based on "a tort theory of recovery to compensate the aggrieved for his lost possession of the property"; "Because recovery is premised upon one's lack of possession of real property, individuals never losing pos-

session of the property cannot recover on a theory of wrongful foreclosure. As such, courts in Texas do not recognize an action for attempted wrongful foreclosure." (emphasis in original; citations omitted)). Therefore, because the only relief sought is a preliminary and permanent injunction, this Court is left to determine " 'the value of the right to be protected or the extent of the injury to be prevented.' " *Hartford Ins. Group v. Lou–Con, Inc.*, 293 F.3d 908, 910 (5th Cir.2002) (quoting *Leininger v. Leininger*, 705 F.2d 727, 729 (5th Cir. 1983)). Plaintiff believes the right to be protected is the equity in his home while defendant argues the right to be protected is the value of the entire home.

In his motion to remand, plaintiff contends the "extent of the injury presented from the viewpoint of plaintiff is the injury that would arise from losing his ownership rights in the property without having received the benefit of required loss mitigation activities. His ownership rights are subject to a lien on the property, and Plaintiff does not seek to void that lien on the property." *Plaintiff's Opposed Motion to Remand,* docket # 4 at page 6. Plaintiff also asserts, in his reply in support of his motion to remand, that the only Fifth Circuit authority cited by BAC, *Frontera Transp. Co. v. Abaunza,* 271 F. 199 (5th Cir.1921), actually supports his loss of equity position.

In *Frontera,* the transportation company sought to restrain the "enforcement of a mortgage executed by it to Gonzalo Abaunza, covering certain property worth much more than $3,000, to declare said mortgage canceled as constituting a cloud on the title to the property described therein, and for general relief." *Id.* at 199. It was alleged the mortgage had been paid except for the principal which was 42,-279.50 in Mexican pesos. It was further alleged the debtor could pay the debt in American money at the rate of exchange quoted, and that the debtor had tendered $600 in American money which was equivalent to the amount of Mexican pesos then due but the defendant had refused the tender. *Id.* at 199–200. The court then explained:

The suit in this case is not a suit to recover $600, but to remove a cloud on the title to a piece of property. The averments of the bill concerning the $600 are the statements of the complainant of what it concedes it should pay in order to do equity as a prerequisite to getting the relief it seeks, i.e., the removal of the cloud on its title. If, instead of the bill averring that plaintiff had tendered, and complainant had refused, the sum now tendered, it had averred that defendant had received this sum which complainant averred was all that was due, but wrongfully refused to surrender plaintiff's notes, or to cancel this mortgage, and that this operated as a cloud on and slander of the title, the property being worth well above $3,000, it could not have been claimed that this was a suit in which the averments of the plaintiff showed that no value was involved.

Here a decree is sought to prevent the defendant from using his mortgage and these notes for any purpose, and to clear up the title to this entire property, which is alleged to be worth much more than $3,000. Where a suit was brought to clear a title and set aside a deed of trust and vacate a deed executed to a purchaser, under a foreclosure, and, if this was not done, then to allow complainant to redeem on payment of the mortgage debt, interest, and costs (less than the jurisdictional amount), the value of the lands, not the amount require to redeem, is the amount in controversy.

*Id.* at 201. The court found the district court had "correctly found that no suffi-

cient tender of the debt, still due on the notes secured by the mortgage, had been made to entitle the complainant to a decree requiring the defendant to cancel and surrender said notes and mortgage." *Id.* at 202.

Based on this holding, plaintiff argues here that equity is the correct valuation because had the plaintiff in *Frontera* been successful, its equity in the land would have been the full value of the property because its debt would have been paid in full, and the court agreed this valuation was the proper measure of the amount in controversy. Unlike *Frontera* however, plaintiff states his homestead remains subject to an encumbrance, and he has not sought to void the lien in its entirety. Plaintiff claims he is merely seeking to compel loss mitigation required by the terms of his deed of trust and to ensure the only entity seeking foreclosure is the owner of the debt. However, as set forth above and as argued by the defendant, this is not what plaintiff asserts in his petition. There, plaintiff seeks a preliminary and permanent injunction which "prohibits Defendant or any of their attorneys, agents, officers, employees, or contractors from foreclosing on Plaintiff's home." It appears plaintiff is seeking to protect his entire property and not just his equity.

In *Berry v. Chase Home Fin.*, No. C–09–116, 2009 WL 2868224 at *3 (S.D.Tex. Aug. 27, 2009), the court was faced with a challenge to the amount in controversy in a suit which sought, in part, injunctive relief prohibiting the defendant from foreclosing on the plaintiff's property. In reaching its conclusion on valuation of the suit, the court explained:

> Here, Plaintiff seeks a declaration "for Defendant to be estopped from accelerating and seeking foreclosure, and be disallowed from seeking foreclosure or dispossession of the Plaintiff from his home." Absent judicial relief, Plaintiff

could be divested of all right, title, and interest to the Property. Thus, the value of the declaratory and injunctive relief to Plaintiff is $244,707.00–the current appraised fair market value of the Property according to the Nueces County Appraisal District.

(Citations to docket omitted.)

Similarly, a more recent decision concurs in part with the foregoing analysis. *Reyes v. Wells Fargo Bank,* No. C.–10–01667 JCS, 2010 WL 2629785 (N.D.Cal. Jun. 29, 2010). After citing the well-established standard set forth in *Hunt v. Wash. State Apple Adver. Comm'n,* that the amount in controversy is "'measured by the value of the object of the litigation,'" the court further explained:

> If the primary purpose of a lawsuit is to enjoin a bank from selling or transferring property, then the property is the object of the litigation. In *Garfinkle [v. Wells Fargo Bank,* 483 F.2d 1074 (9th Cir.1973) ], the defendant was proceeding with a non-judicial foreclosure on the plaintiff's property, and had issued a notice of default but had not yet sold the property. The plaintiff challenged the lawfulness of the non-judicial foreclosure procedure and sought an injunction prohibiting the bank from selling the property. Reasoning that "the whole purpose of this action is to [prevent] the [bank] from selling [the] property," the court found the property to be the object of the litigation.

* * * *

The above cases support the proposition that regardless of whether the property at issue has been sold in foreclosure or is still held by the lender, the value of the property is the object of the litigation for the purposes of determining whether the amount-in-controversy requirement has been met so long as the plaintiff is seeking injunctive relief to

prevent or undo the lender's sale of the property.... In other words, Plaintiffs seek to prevent Wells Fargo from selling the foreclosed property to a third party. Therefore, as a practical matter, the injunctive relief sought by Plaintiffs in this case is analogous to the relief that was requested in *Henderson [v. Nationstar Mortg. Co., LLC*, 2008 WL 302374 (2008)], *Garcia [v. Citibank, N.A.*, 2010 WL 1658569 (2010)], and *Cabriales [v. Aurora Loan Services*, 2010 WL 761081 (2010)], in which the plaintiffs' properties had not yet been sold when the actions were initiated....

The next issue is how to value the Property. In *Garfinkle*, the court held that the amount-in-controversy requirement was satisfied because both the amount of the plaintiff's indebtedness on the loan and the fair market value of the property exceeded the statutory amount in controversy threshold. In the wake of *Garfinkle*, some district courts in the Ninth Circuit have relied on the amount of indebtedness in foreclosure cases, while others have looked to the fair market value of the property to determine whether the amount-in-controversy requirement is met.

*Id.* at *4–6 (citations omitted). The court found that the fair market value of the property as well as the amount remaining unpaid on the loan both exceeded the amount-in-controversy minimum.[1] The court also rejected plaintiffs' assertion:

that the value of the injunctive relief is merely the administrative cost of restructuring Plaintiffs' loan. Plaintiffs have cited no case law in support of this assertion. Nor have they addressed the

body of case law discussed above, in which courts have held that the proper measure of the value of injunctive relief in similar actions challenging foreclosure is the value of the property subject to foreclosure.

*Id.* at *6.

A district court in Alabama also addressed this issue and the insistence by the plaintiff that the amount in controversy was the equity in the property. *Mapp v. Deutsche Bank Nat'l Trust Co.*, No. 3:08–CV–695–WKW, 2009 WL 3664118 (M.D.Ala. Oct. 28, 2009). The court noted that not only was plaintiff's ownership interest at stake in the litigation but also the value of that interest as well. The court further provided:

In the Eleventh Circuit [as in the Fifth Circuit], the value of the object of the litigation is measured solely from the plaintiff's prospective, the value to the defendant is irrelevant. The plaintiff's viewpoint rule, however, does not permit a plaintiff to set subjectively the value of the object of the litigation. Rather, the cases upon which the *Ericsson [GE Mobile Communications, Inc. v. Motorola Communications & Electronics, Inc.*, 120 F.3d 216 (11th Cir.1997)] court relied emphasized that the relevant "value" is the value of the right that the plaintiff is seeking to enforce. Nor can the value include benefits that are "speculative and immeasurable."

The court then explained the nature of foreclosure sale:

The property sells at fair market value, not the "equity" claimed by the mortga-

---

1. According to the declaration plaintiff's counsel attached to the motion to remand, the appraised value of the property herein by the Bexar County Appraisal District is $85,230. Also, as set forth in the motion, "the original loan amount on the note that is subject of this lawsuit was $86,166." Plaintiff also states he

has only owned the home for approximately 2½ years so "it is virtually impossible that he has acquired $75,000 in equity or more." Defendant contends this shows that even if the amount is controversy is measured by the underlying debt, the amount in controversy is met.

gor. The fair market value (such as it is in the foreclosure market) is paid for the property, and cash generated by the sale is transferred to the mortgagee to settle the promissory note debt and expenses of the sale.... The only way "equity" of the mortgagor is ever a factor is if the property sells for more than the accumulated debts and expenses associated with the mortgage, junior mortgagees and other lien holders. Even then, the full purchase price changes hands after the sale, and the funds are allocated among the interested parties according to the contracts and law, with any "equity" going to the mortgagor. Therefore, the enjoinder of a foreclosure sale prohibits a transaction involving the whole value of the property."

"The most appropriate way to measure the value of th[e rights at stake when a foreclosure is at issue] is the value of the property itself. This circuit has long recognized this principle. *See Frontera Transp. Co. v. Abaunza*, 271 F. 199, 201 (5th Cir.1921) (holding, in a suit to cancel a mortgage and remove the mortgage as a cloud on title, that "the value of the lands, not the amount required to redeem, is the amount in controversy").[2] Similarly, the Eleventh Circuit more recently held that, in an action for specific performance of a contract to purchase land, the fair market value of the property, and not the contract price, established the amount in controversy.

\* \* \* \* \*

At least one of the bundle of property rights that Mapp is seeking to enforce or protect through this litigation is his right to peacefully possess and enjoy his home. He is not seeking merely to delay Defendants' foreclosure action or to

obtain the value of the equity in his home. Foreclosure will require him to vacate his home and will cost him its title. From Mapp's perspective then, it is the whole title and its "bundle of rights" at issue.

To employ *Cohen's* phraseology, if the injunction were permanently granted, the benefits obtained by Mapp would be the right to retain ownership of and title to his home, as well as the right to occupy the home. Ownership, title and possession, thus, are not only the object of this lawsuit, but similarly represent the value of the rights sought to be protected by an injunction enjoining foreclosure. In monetary terms, these benefits, objects and rights are best measured by the value of the home itself.

*Id.* at *3–4 (citations other than to Frontera Transp. omitted); *see Green Oaks, LLC v. U.S. Bank Custodian–Sass Muni*, No. 1:09CV221 LG–RHW, 2009 WL 2019060 at *2 (S.D.Miss. Jul. 8, 2009) (relying on *Frontera Transportation*, court found "the amount in controversy here is not the amount necessary to pay the unpaid taxes and redeem the property, but the value of the property itself. The only evidence of the value provided to the Court is an appraisal showing a value of $955,000, which is well above the jurisdictional amount.")

On the other hand, the district courts in Alabama issued two decisions, prior to that in *Mapp*, which support plaintiff's equity position. *James v. U.S. Bank Nat'l Ass'n*, No. 3:09cv247–MHT, 2009 WL 2170045 (M.D.Ala. Jul. 17, 2009); *Sanders v. Homecomings Fin., LLC*, No. 2:08–CV–369–MEF, 2009 WL 1151868 (M.D.Ala. Apr. 29, 2009). In *James*, the plaintiffs

---

**2.** In a footnote, the Court explained the Eleventh Circuit adopted as binding precedent "all of the decisions of the former Fifth Circuit Court of Appeals that were handed down prior to the close of business on September 30, 1981."

did not challenge the validity of the mortgage in its entirety but sought a temporary restraining order until their allegation that the entity seeking to foreclose was not the owner of the debt could be resolved. The court found from the plaintiff's perspective the value of the injunctive relief was not the "entire value of the property; rather, it is the value of a delay in foreclosure." *James*, 2009 WL 2170045 at *2. In a footnote, the court noted the amount in controversy would remain "unclear" even if a permanent injunction had been requested which attacked the validity of the entire mortgage stating, "Under this approach, the plaintiffs' interest in the injunction would be their equity in the property not the value of the property itself" and "the amount of that equity has not been clearly established." *Id.* at n. 2. In support of this proposition, the court relied on *Sanders v. Homecomings Fin, LLC,* 2009 WL 1151868 at *3 (M.D.Ala. Apr. 29, 2009), and *Siewak v. AmSouth Bank,* 2006 WL 3391222 at *5 (M.D.Fla. Nov. 22, 2006).[3]

In *Sanders,* "[t]he heart of the complaint [was] the unspecified damages Sanders seeks as a result of the mortgage contract and as a result of the alleged negligence, fraud, and coercion associated with the sale of the mortgage product to him by Homecomings." *Sanders,* 2009 WL 1151868 at *3. The court found the amount of the mortgage was not in issue concerning the first seven counts alleged because damages were sought for the wrongful conduct by Homecomings in the original transaction. The eighth count requested a temporary restraining order and was found unable to support jurisdiction despite the original mortgage value being in excess of $75,000. Recognizing " '[T]he value of the requested injunctive relief is the monetary value of the benefit that would flow to the plaintiff if the injunction were granted,' " the court explained:

> Here, Sanders' interest in the property is, as [sic] the very most, his equity in the home. Though the Court does not have direct evidence of Sanders' equity in the home, the balance due on the loan at the time Homecomings instituted foreclosure proceedings ($98,127.38) was *greater than* the original value of the loan($97,500.00). This-together with the broad national trend of declining home values-suggest Sanders' interest in the home is an obligation, rather than an asset, because he would have to pay the balance due on the loan following foreclosure sale. In any event, the Court would have to speculate about the amount in controversy given only the facts before it.
>
> There is nothing on the face of the complaint unambiguously stating how much Sanders seeks in damages, nor can the Court determine the amount in issue

**3.** In this case, the court found the defendants had submitted substantial evidence showing the amount in controversy was met. *Siewak,* 2006 WL 3391222 at *4. The court discussed the value of the property via an independent appraisal, the county appraiser, and through a title search showing the amount of equity in the property. *Id.* at *4–5. The court also found the object of that litigation to be the "avoidance of a forced sale of the property to satisfy a judgment lien." *Id.* at *5. The court stated, "When viewing the value of this declaratory relief from Plaintiffs' viewpoint, the court concludes that the benefit that would flow to Plaintiffs would be the avoidance of a judgment lien in the amount of $962,029 against the property that Plaintiffs own." *Id.* The court found "based on the evidence before the court as to the subject property's market value as of the time of removal and the evidence as to the outstanding encumbrances on the property, or lack thereof, the court concludes that should Plaintiffs succeed in obtaining homestead status on the subject property, thereby preventing Mancinelli from collecting on his judgment lien, a benefit clearly in excess of the $75,000 jurisdictional requirement would flow to Plaintiffs." *Id.*

by looking at the value of the underlying mortgage. A conclusion that more than $75,000 in controversy could only be supported by the kind of unguided speculation explicitly prohibited by *Lowrey*. Therefore, this Court cannot exercise jurisdiction pursuant to 28 U.S.C. § 1332.

*Id.* at *3–4. The court did not set forth authority for its equity interest position, and this Court is mindful that the relief requested on the eighth count was a temporary restraining order. *See Carstarphen v. Deutsche Bank Nat'l Trust Co.*, No. 08–0511–WS–M, 2009 WL 1537861 at *4–6 & n. 11 (S.D.Ala. Jun. 1, 2009) ("The key point on valuation ... is that the injunctive relief sought in the Complaint is temporary, not permanent, in nature"; "The temporal scope of the injunctive relief sought is crucial to an assessment of its valuation from Carstarphen's perspective for amount-in-controversy purposes"; "What is the value to Carstarphen of a temporary restraining order forestalling Deutsche Bank's foreclosure sale for an abbreviated period of time? It is surely much lower than the value of permanent injunction of that foreclosure sale. In the former circumstance, she could still lose her home to Deutsche Bank once the TRO expired, while remaining obligated to pay her mortgage to a third party. In the latter, however, she could never lose her home to Deutsche Bank, although she would continue being obligated to pay her mortgage to a third party"; when a permanent injunction is sought, "the value of the injunctive relief would be the value of the home because the only effect of the injunction would be to allow Carstarphen to keep her home by blocking Deutsche Bank's foreclosure efforts, without altering or eliminating her mortgage payment responsibilities to a third party. If, as the Motion to Reconsider posits, the injunctive relief sought in the Complaint is not permanent, but merely temporary, the alter-natives cannot be framed so starkly. In that event, the applicable comparison would be between a situation in which Carstarphen loses her home today and remains obligated to pay the mortgage (if injunctive relief is denied), and one in which she may still lose her home to Deutsche Bank in a matter of days or weeks upon expiration of the TRO and remains obligated to pay the mortgage to the third party (if injunctive relief is granted)"; "Because the benefit to a homeowner of a permanent injunction blocking a foreclosure sale is far greater than that of an ephemeral TRO prohibiting the same conduct for mere days or weeks, the jurisdictional impacts of this distinction are profound"; "the proper inquiry for valuation of the injunctive relief sought is the value to Carstarphen of being insulated from foreclosure by Deutsche Bank during a fleeting, transitory span. Defendants make no arguments that might warrant equating the value of a brief postponement of foreclosure proceedings with the full $86,000 value of the home").

This Court is mindful that plaintiff's case is unlike most of the decisions discussed herein because he claims to seek the benefit of mitigation measures and to confirm the holder of his note and nothing more. However, the Court cannot overlook the fact plaintiff seeks both a preliminary and permanent injunction to prevent the defendant from foreclosing on his home. This request for relief leads the Court to agree the object of the litigation is plaintiff's home and the fair market value of his home is the proper measure of the amount in controversy. Moreover, plaintiff asserts the injury from his viewpoint is "losing his ownership rights in the property without having received the benefit of the required loss mitigation activities." Therefore, the declaration by the plaintiff which asserts the value of the home is in excess of $75,000 leads this

Court to conclude it has diversity jurisdiction.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's Opposed Motion to Remand (docket # 4) is DENIED.

It is so ORDERED.